RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0044P (6th Cir.)
File Name: 02a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

THERESA E. FOSTER,
     *Plaintiff-Appellant,*

     *v.*

WILLIAM A. HALTER,
     *Defendant-Appellee.*

No. 00-4267

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 99-00307—Walter H. Rice, Chief District Judge.

Argued: November 28, 2001

Decided and Filed: December 20, 2001[*]

Before: CLAY and GILMAN, Circuit Judges; EDGAR,
Chief District Judge.[**]

---

[*] This decision was originally issued as an "unpublished decision" filed on December 20, 2001. On January 22, 2002, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable R. Allan Edgar, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** Clifford M. Farrell, MANRING & FARRELL, Columbus, Ohio, for Appellant. Rick Young, ASSISTANT REGIONAL COUNSEL, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee. **ON BRIEF:** Clifford M. Farrell, MANRING & FARRELL, Columbus, Ohio, for Appellant. Rick Young, ASSISTANT REGIONAL COUNSEL, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Theresa E. Foster applied for and was denied disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. The district court affirmed the adverse decision of the Administrative Law Judge (ALJ). Foster appeals that ruling, claiming that (1) her impairments meet or equal the listing for mental retardation, (2) the ALJ abused his discretion by refusing Foster's request for additional testing and expert testimony, (3) the ALJ's finding that Foster could perform a substantial number of jobs in the national economy is not supported by substantial evidence, and (4) the district court erred in refusing to remand the case for consideration of additional evidence. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Factual Background

Foster was 37 years old when she injured her left leg in July of 1992.  Although Foster was initially diagnosed with a sprain to her medial collateral ligament, she later developed a foot-drop gait.  Beginning in March of 1994, Foster also sought treatment from a psychiatrist.  Foster underwent a psychiatric evaluation by Charles Walters, M.D., on January 6, 1995 at the request of the Social Security Administration.  Dr. Walters reported that Foster met the criteria for severe mood disorder and that, as a result, she had a decreased ability to relate to others, deal with the public, and withstand the stress and pressures associated with day-to-day work activities.

On February 18, 1997, James C. Tanley, Ph.D., diagnosed Foster as having an adjustment disorder with depressed mood. Foster informed Dr. Tanley that she had completed the ninth grade in special education classes and that she had tried four times without success to earn her GED.  Dr. Tanley reported that Foster's verbal IQ was 70, her performance IQ was 71, and her full scale IQ was 69, but he questioned whether Foster was making a good faith effort.  These scores placed Foster at the uppermost limit of the mild range of mental retardation. Foster's attorney subsequently referred her to Roxanne Lewis, Ph.D., for additional testing.  On December 10, 1998, Dr. Lewis reported that Foster's verbal IQ was 71, her performance IQ was 70, and her full scale IQ was 68.  Dr. Lewis noted that Foster was "very cooperative with the examination."

### B.  Procedural background

Foster applied for disability insurance benefits (DIB) under Title II and Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, alleging a disability onset date of July 24, 1992. The applications were denied both initially and on reconsideration. After a hearing, the ALJ determined that Foster was not disabled within the

meaning of the Social Security Act because she "retained the residual functional capacity to perform a significant number of jobs in the national economy."

Foster appealed the ALJ's decision. The Appeals Council vacated the decision and remanded the matter after concluding that (1) "additional evidence is needed to document the nature and severity of [Foster's] mental impairment," and (2) the ALJ failed to "direct the vocational expert to assume moderate restrictions in daily activities and social functioning, and deficiencies of concentrating occurring often." On remand, the ALJ was directed to obtain additional evidence concerning Foster's affective disorder and supplemental evidence from a vocational expert to clarify the effect of Foster's moderate restrictions in daily activities and social functioning on her capacity to work.

After holding another hearing, the ALJ again denied Foster's application for DIB and SSI. The ALJ found that, despite her severe impairments, Foster "retains the residual functional capacity to do work which exists in significant numbers in the national economy." Foster again appealed the ALJ's decision, but this time the Appeals Council denied her claim.

She then filed a complaint in the United States District Court for the Southern District of Ohio. Her case was referred to a magistrate judge. The magistrate judge recommended that the court affirm the denial of benefits. Over objections by Foster, the district court adopted the magistrate judge's Report and Recommendation. This appeal followed.

## II. ANALYSIS

### A. Standard of review

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review

scores and made no reference to Foster's school records or work history.

Given the lack of evidence in support of Dr. Lewis's diagnosis, Foster has not established that there was "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with [this] evidence." *Sizemore*, 865 F.2d at 711. We therefore affirm the district court's determination that the report was not part of the record for purposes of substantial evidence review and that a remand was not warranted under 42 U.S.C. § 405(g).

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."). "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id*.

For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam). As noted above, the burden of showing that a remand is appropriate is on the claimant. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

The district court correctly concluded that Foster had failed to demonstrate that a remand was appropriate. First, given that the Appeals Council remanded this matter for further consideration of Foster's mental impairments in August of 1996 and that the rehearing did not take place until March of 1998, Foster had more than a year and a half to present new evidence to the ALJ. Foster claims that the ALJ's failure to respond to her requests for additional testing was the reason for her failure to acquire and present the evidence. The burden of providing a complete record, however, rests on the claimant. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Furthermore, even if Foster had demonstrated "just cause" for the delay, Dr. Lewis based her diagnosis of mental retardation solely on Foster's IQ

"is limited to determining whether there is substantial evidence in the record to support the findings"). "'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, we must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

Our role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony. *See Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987) (per curiam). Instead, we focus on whether substantial evidence supports the Commissioner's determination that Foster is not disabled within the meaning of the Social Security Act.

## B.  Legal framework for evaluating disability claims

A person is considered disabled under the Social Security Act "if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Furthermore,

an individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden lies with the claimant to prove that she is disabled. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

A five-step analysis is utilized for evaluating disability claims. 20 C.F.R. § 404.1520. The claimant must first show that she is not engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Next, the claimant must demonstrate that she has a "severe impairment." 20 C.F.R. § 404.1520(c). A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." 20 C.F.R. § 404.1520(d). If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. 20 C.F.R. § 404.1520(e). Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. 20 C.F.R. § 404.1520(f). The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work. *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

### C.    Foster's impairment does not "meet or equal" Listing 12.05C

Foster first argues that the ALJ erred by failing to find that her impairment meets or equals Listing 12.05C, the listing for mental retardation. As noted above, a claimant has the burden of demonstrating that her impairment meets or equals a listed impairment.

Listing 12.05C provides in pertinent part as follows:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental

Walters, and Dr. Lewis. In a questionnaire, Dr. Tanley stated that Foster's abilities to perform most work-related activities were only "fair" or "poor or none." These findings, however, were neither explained nor supported by medical or clinical findings. Moreover, these findings were inconsistent with Dr. Tanley's narrative report. The ALJ was therefore entitled to conclude that the findings listed in the questionnaire were not entitled to significant weight. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). For the same reasons, the ALJ did not err in declining to include limitations found by Dr. Walters. Foster's argument that Dr. Lewis's findings should have been incorporated into the hypothetical question also fails because Dr. Lewis did not test Foster until December of 1998, well after the ALJ conducted the hearing in question.

Based on the above analysis, we conclude that the ALJ did not err in formulating the hypothetical questions posed to the vocational expert. We therefore affirm the ALJ's conclusion that Foster was not disabled.

### F.    The district court did not err in refusing to remand the case for consideration of additional evidence

Foster finally argues that the district court erred in refusing to remand the case to the ALJ for consideration of the December 1998 report by Dr. Lewis. The district court refused to remand the case because (1) the report was not part of the record for purposes of substantial evidence review, and (2) a remand was not warranted under 42 U.S.C. § 405(g) because Foster had failed to show "good cause" for her failure to submit the evidence during the prior proceeding.

As the Commissioner has pointed out, this court has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review. *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996) ("[W]here the Appeals Council considers new evidence

### E.  Foster was capable of performing a significant number of jobs in the national economy

Foster also argues that the ALJ erred in relying upon the vocational expert's testimony, because the hypothetical question that the ALJ posed to the expert did not include all of the limitations on Foster's capabilities.  The district court concluded that the ALJ did not err by relying on the vocational expert's testimony.  As noted above, this court reviews the ALJ's decision to determine whether substantial evidence supports the finding that the claimant is not disabled.

The ALJ posed two hypothetical questions to the vocational expert.  First, the ALJ asked whether a hypothetical person with the claimant's physical limitations and prior work experience, who was "limited to simple repetitive tasks, low-stress jobs" with "minimal interpersonal contacts in the workplace," could perform jobs that exist in the national economy.  After the vocational expert indicated that such jobs do exist, the ALJ modified the hypothetical by asking whether these jobs could be performed with someone with an IQ between 70 and 80.  The vocational expert again indicated that such jobs do exist.

Foster first claims that the ALJ failed to comply with the Appeals Council's order on remand.  The Appeals Council vacated the ALJ's first decision because he failed to "direct the vocational expert to assume moderate restrictions in daily activities and social functioning, and deficiencies of concentrating occurring often."  On remand, however, the Appeals Council simply stated that any hypothetical question should "reflect the specific capacity and limitations established by the record as a whole."  It did not order the ALJ to incorporate every specific limitation on which evidence was presented.

Foster also complains that the hypotheticals failed to incorporate the limitations on her work functions caused by her mood disorder and mental impairments as established by the psychological and IQ testing performed by Dr. Tanley, Dr.

period; i.e., *the evidence demonstrates or supports onset of the impairment before age 22*.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . .
C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).  A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) ("Specific symptoms, signs, and laboratory findings in the paragraph A criteria of any of the listings in this section cannot be considered in isolation from the description of the mental disorder contained at the beginning of each listing category."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (holding that a lack of evidence to support the requirements of Listing 1.05(C) provided substantial evidence that the claimant was not disabled).  As the Commissioner has pointed out, recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) *as amended by* 65 Fed. Reg. 50746, 50776 (August 21, 2000) (emphasis added).

Substantial evidence exists to support the ALJ's conclusion that Foster does not meet the listing for mental retardation.  First, the evidence does not demonstrate or support onset of the "significantly subaverage general intellectual functioning with deficits in adaptive functioning" before age 22.  Foster has failed to show that her general intellectual functioning was "significantly subaverage" prior to that age.  None of her testing or evaluation was contemporaneous with her developmental period; she was already 42 years of age when the first testing was performed in 1997.  The only evidence in

the record pertaining to this issue is that Foster left school after completing the ninth grade, but why Foster did not continue her studies is unclear.

Moreover, the evidence does not demonstrate or support onset of "deficits in adaptive functioning" before age 22. *Burrell v. Comm'r of Social Security*, No. 99-4070, 2000 WL 1827799, at *2 (6th Cir. Dec. 8, 2000) (unpublished table decision) (per curiam) ("[R]eceiving benefits under Listing 12.05 also requires a deficit in adaptive functioning.") (internal quotation marks omitted). Foster's work as an accounting clerk at a bank and a liquor store clerk prior to injuring her leg demonstrate that she had the ability to perform relatively complicated tasks prior to the injury to her leg in 1992.

In the alternative, Foster claims that the combined effect of her mild mental retardation and a severe mood disorder is equivalent to Listing 12.05. A claimant can demonstrate that she is disabled because her impairments are equivalent to a listed impairment by presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original).

Although the presence of multiple impairments can on occasion support a finding that the impairments are equivalent to a listing, a finding of equivalence under Listing 12.05(C) will "'very rarely be required.'" *Riley v. Apfel*, No. 97-1799, 1998 WL 553151, at *5 (6th Cir. Aug. 20, 1998) (unpublished table decision) (quoting Social Security Programs Operations Manual DI24515.056DIC). Given that Foster has failed to present any evidence showing "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22, there is also substantial evidence to support the ALJ's conclusion that Foster's impairments do not equal the listing for mental retardation. The ALJ's conclusion that Foster did not "meet[] or equal[] a listed impairment" is therefore affirmed.

**D.  The ALJ did not abuse his discretion in rejecting Foster's requests for additional testing or expert testimony**

Foster next claims that the ALJ erred when he rejected her requests for additional testing or expert testimony. An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary. 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added); *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). The district court concluded that, given "the absence of evidence of deficits in adaptive behavior which initially manifested [themselves] during the developmental period, [the ALJ] properly exercised [that] discretion . . . ."

Given that there was already sufficient testimony on Foster's impairments in the record for the ALJ to evaluate her mental condition and residual functional capacity, the ALJ did not abuse his discretion in denying Foster's requests for additional testing or expert testimony. Although Foster focuses much of her argument on the ALJ's alleged misinterpretation of her IQ reports, there was substantial evidence in the record to support the district court's conclusion that Foster's impairments do not meet or equal the listing for mental retardation. We therefore find no error in the district court's conclusion that the ALJ did not abuse his discretion in denying Foster's requests for additional testing or expert testimony.