NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0027n.06
Filed: January 12, 2005

Case No. 03-1564

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

TIMOTHY KNIGHT,                                     )
                                                    )
    Plaintiff-Appellant,                            )
                                                    )   **ON APPEAL FROM THE**
    v.                                              )   **UNITED STATES DISTRICT**
                                                    )   **COURT FOR THE EASTERN**
COMMISSIONER OF SOCIAL SECURITY,                    )   **DISTRICT OF MICHIGAN**
                                                    )
    Defendant-Appellee.                             )
                                                    )
_____            )
                                                    )
                                                    )

**BEFORE: BATCHELDER and DAUGHTREY, Circuit Judges; DOWD,[*] District Judge.**

    **ALICE M. BATCHELDER, Circuit Judge.** Timothy Knight ("Knight") appeals the

district court's denial of his motion for summary judgment on his claim that the Social Security

Administration's ("SSA") Administrative Law Judge ("ALJ") wrongly denied Knight's application

for Supplemental Security Income and Disability Insurance Benefits. Specifically, Knight argues

on appeal that the substantial evidence standard does not support either the ALJ's finding that

Knight's impairments did not meet or equal a listed impairment, or the ALJ's finding that there are

a significant number of jobs that Knight could perform. Because we find that substantial evidence

supports both the ALJ's finding that Knight's medical problems do not meet or equal the listing for

---

[*]The Honorable David D. Dowd, Jr., District Judge for the Northern District of Ohio, sitting by designation.

cerebral palsy, and the ALJ's finding that Knight could perform a significant number of jobs despite his impairment, we affirm the district court's denial of summary judgment.

## I.

Knight was diagnosed with cerebral palsy and a seizure disorder as a child. Cerebral palsy is a condition characterized by poor muscle control, spasticity (tightness and rigidity), paralysis and other neurologic deficiencies. Symptoms can range from barely noticeable clumsiness to severe spasticity that contorts the arms and legs.

Knight testified that he is dyslexic and essentially can not read. Knight has a high school diploma, but largely from special education classes due to his dyslexia and low reading ability. Knight also testified that he would have difficulty performing sedentary work because his back tenses up if he sits too long. He thought he could sit for about forty-five minutes before he had to stand and stretch his back to relieve the tension, but as the day goes on, it gets progressively worse.

Knight testified that he prepares his own simple breakfast, lunch, and sometimes dinner. He helps out around his parents' house, where he has lived continually since 1997, by occasionally driving short distances to the store (he has his driver's license), cleaning his room, doing some laundry, vacuuming, dusting, cutting grass, and removing snow with a snow-blower. He also visits family and friends several days a week. Knight also testified that he watches television four to six hours daily, and that he often sleeps up to an hour and a half during the day when his energy is drained. Knight stated that although some days it hurts to walk at all, other days he can walk two long blocks. Knight can also ride a bicycle six blocks.

Medical professionals diagnosed Knight with low to average range of intellectual functioning and a reading disorder. Doctors found that although Knight had cerebral palsy accompanied by

lower extremity weakness and spasticity, he was only mildly impaired in ambulation. One physician opined that Knight could lift up to twenty pounds occasionally and ten pounds frequently, and could stand/walk and sit for about six hours. Another physician stated that Knight could only perform work from a seated position.

The VE testified that if Knight could perform work which did not involve lifting in excess of ten pounds, with a sit/stand option, with simple one, two, or three step operations, that did not involve reading or writing or interacting with the general public, then there were approximately 8,000 jobs available in Knight's local area that could accommodate the hypothetical limitations. The VE explained, however, that if Knight could not do fine manipulation, then he could perform 40% fewer of the industrial processing jobs.

In his brief and during oral argument, counsel for Knight attempted to demonstrate that the ALJ erred in denying benefits by referring to the fact that after the ALJ's September, 1999, decision denying Knight benefits, Knight filed a new application for and was granted SSI Benefits. At oral argument, the panel questioned both parties regarding the effect that subsequent grant of SSI Benefits would have on the appeal at issue. Solely because of the panel's own inquiry regarding the subsequent award of SSI Benefits, we granted Knight's post-oral argument motion to supplement the record with the SSI notice of award. Nevertheless, we continue to agree that the supplemental grant of the SSI award is irrelevant to this appeal because the subsequent grant of SSI benefits found Knight disabled beginning in May or June of 2002, more than two and a half years after the September 1999 decision at issue in this appeal.

**II.**

3

Disability insurance benefits are available to an individual who can establish he has a "disability" which arose prior to the expiration of the claimant's insured status within the terms of the Social Security Act ("SSA"), 42 U.S.C. § 423(d)(1)(A). Specifically, the claimant must show that he is unable to engage in any substantial gainful activity by reason of any "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential process to determine whether a claimant has met his burden of establishing a disability. 20 C.F.R. §§ 404.1520 and 416.920. The ALJ acknowledged Knight's limitations when he found at step two that Knight had severe impairments including cerebral palsy and a reading disorder. Knight challenges the ALJ's finding under step three that Knight's impairments did not meet or equal a listed impairment, and the ALJ's finding under step five that there are a significant number of jobs that could accommodate Knight's impairments.

In order to "meet" the listing for cerebral palsy, Knight must demonstrate cerebral palsy with "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of . . . gait and station." 20 C.F.R. Part 404, Subpart. P, Appendix 1, §§ 11.04(B), 11.07(D). This definition cross-references Listing 11.00(C), which elaborates on "persistent disorganization of motor function" by instructing that "[t]he assessment of impairment depends on the degree of interference with locomotion." 20 C.F.R. Part 404, Subpart. P, Appendix 1, § 11.00. Under the substantial evidence standard, the testimony of Knight's own doctors that Knight had only a mildly unsteady gait and did not require a cane is sufficient to support the ALJ's finding that Knight did not meet the listed impairment for cerebral palsy because he did not have

4

a "significant" disorganization of motor function, even though there is also substantial evidence that Knight suffers from severe physical discomfort.

Knight argues that even if his physical impairments alone do not "meet" the listing for cerebral palsy, the combination of his mental impairments and his physical impairments "equals" the listed impairment for cerebral palsy. To qualify for benefits by showing that the combination of his unlisted impairments is "equivalent" to a listed impairment, Knight "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original); *Foster v. Halter*, 279 F. 3d 348, 355 (6th Cir. 2001) (emphasis in original); 20 C.F.R. § 404.1526(a)-(b) (1999). Knight must, therefore, demonstrate medical findings related to his cerebral palsy and reading disorder that were of "equal medical significance" to sustained disturbance of gait and station. As noted above, the medical evidence relating to Knight's physical problems stemming from cerebral palsy indicates that Knight has disorganization of motor function, but only a limited degree of interference with locomotion. Under this court's deferential analysis, that is sufficient evidence to support the ALJ's findings that the combination of his physical problems and his mental problems does not equal in severity the sustained disturbance of gait and station required under the Listing for Cerebral Palsy.

### III.

If a claimant's impairment is so severe as to preclude him from performing his past employment, but is not so severe as to meet or equal the statutory impairment requirements, then the ALJ must consider the claimant's vocational factors to determine if he can perform other employment. At this step, the burden shifts to the SSA to show that a significant number of jobs accommodate the claimant's vocational factors, meaning that the claimant can engage in substantial

5

gainful activity in the national economy. 20 C.F.R. § 404.1520. The ALJ based his decision that Knight could make successful vocational adjustment to jobs existing in significant numbers on the opinion of the Vocational Expert ("VE").

Knight argues that the hypothetical the ALJ presented to the VE did not accurately portray his physical and mental impairments because it did not include the limitations Knight and his mother described in their testimony. Knight's argument is unavailing, however, because the ALJ need only include the alleged limitations that the ALJ accepts as credible and that are supported by the evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F. 2d 1230, 1235 (6th Cir. 1993). The evidence supports the two reasons the ALJ found that the testimony of Knight and his mother regarding the extent of Knight's limitations not credible. First, objective medical evidence did not support Knight's testimony as to the extent of his limitations. Not a single physician testified that Knight's cerebral palsy or scoliosis rendered him incapable of sedentary work. The limitations that the ALJ included in the hypothetical addressed all the limitations the doctors attributed to Knight. Second, Knight's daily activities were not consistent with his testimony as to the extent of his limitations. The ALJ was justified in finding that if Knight could, as he testified, cook, clean, wash laundry, drive, ride a bicycle, mow the lawn, snow-blow, play video games, watch movies, attend football games, and visit with family and friends, he could perform a job where he had to lift a maximum of ten pounds, was able to alternate sitting and standing at his discretion, needed to perform only simple, one-step to three-step operations, did not have to read, write, or do fine manipulation, and could avoid interacting with the general public.

Because substantial evidence supports the ALJ's conclusion that Knight's impairments did not meet or equal the impairments listed in the regulations, and did not prevent Knight from working

6

in a significant number of jobs, this court must affirm the district court's denial of summary

judgment.