Bernice **CARMACK**, Plaintiff–Appellant,

v.

**Jo Anne B. BARNHART**, Commissioner of Social Security, Defendant–Appellee.

No. 04–6152.

United States Court of Appeals, Sixth Circuit.

Aug. 31, 2005.

Julie A. Atkins, Atkins Law Office, Harlan, KY, for Plaintiff–Appellant.

Yvette S. Sanders, Social Security Administration, Office of the General Counsel, Chicago, IL, for Defendant–Appellee.

Before BOGGS, Chief Judge; BATCHELDER and GIBBONS, Circuit Judges.

BATCHELDER, Circuit Judge.

Plaintiff–Appellant Bernice Carmack appeals the district court's order granting summary judgment in favor of the Commissioner of Social Security ("Commissioner") on her claim for supplemental security income ("SSI") benefits. Because substantial evidence supports the Commissioner's finding that Carmack is not disabled, we will AFFIRM the judgment of the district court.

Carmack filed for SSI in October of 1998, alleging that she was unable to work due to various physical and mental ailments. The Commissioner initially denied her claim, and Carmack requested a hearing before an administrative law judge ("ALJ"). The ALJ denied relief and the Appeals Council denied Carmack's request for review. After Carmack appealed the Commissioner's decision to the district court, the Appeals Council vacated and remanded the case because a certified administrative record could not be prepared due to a defective hearing tape.

The ALJ conducted a de novo hearing at which Carmack and Susan Seylar, a vocational expert, testified. The ALJ then issued an unfavorable decision, finding that the ailments that Carmack complained of did not prevent her from performing her past relevant work. He also found that

Carmack did not meet the definition of "mentally retarded." Carmack appealed the ALJ's decision directly to the district court, which affirmed the ALJ. The court concluded that there was no evidence demonstrating mental retardation manifested itself before Carmack reached age 22, and that Carmack's IQ scores were insufficient to establish mental retardation because Carmack had not shown "significant deficits or impairments in adaptive functioning." On appeal, Carmack argues that the district court's grant of summary judgment was improper because the evidence clearly shows that she is entitled to SSI due to mental retardation.

The record reveals that Carmack, who dropped out of high school five weeks before graduation and later obtained her G.E.D., was never enrolled in remedial classes and made average marks during her scholastic career. Since leaving high school, Carmack has performed a variety of jobs, including a stint as a court reporter. Most recently, Carmack owned and operated a tanning salon for a little over two years before leaving for reasons unrelated to her cognitive abilities. In this capacity she kept the salon's books, used an adding machine, managed the salon's operations, took and recorded appointments, and recorded the length of time customers stayed in the tanning beds. During the administrative proceedings, Carmack reported that she is self-sufficient, enjoys reading the newspaper, and manages her own finances.

Three different mental health professionals evaluated Carmack in connection with her application for benefits: a state psychologist; Roy Nevils, Ph.D, a second psychologist employed by the state, and Robert Spangler, Ed.D. Dr. Nevils's report described Carmack as "cooperative, spontaneous, coherent, and without evidence of disorientation or thought disor-

der." Carmack took a battery of psychological examinations that revealed that she has an IQ of 70, reads at an eighth-grade level, and performs arithmetic at a fifth-grade level. Dr. Nevils opined that these scores are "a valid estimate of [Carmack's] true abilities" and that she is "in the borderline range of intellect."

The state psychologist who reviewed the record in 1998 concluded that Carmack could perform some detailed work, had a limited but adequate ability to concentrate, and could adapt to moderate levels of stress. Robert Spangler evaluated Carmack in February of 2001 and concluded that she has "borderline to low-average intelligence." His report reveals that Carmack complained of trouble concentrating and a loss of short-term memory. None of the professionals who examined Carmack described her as mentally retarded.

Pursuant to 42 U.S.C. § 405(g), we may review the Commissioner's final decisions. Where, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. *Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir.2004). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Substantial evidence is more than a "mere scintilla" of evidence, but less than a preponderance; it is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

■ Carmack argues that the ALJ's finding that her impairments do not render her disabled due to mental retardation is not supported by substantial evidence. To establish disability, a claimant must

show: 1) the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and 2) that her impairments render her unable to engage in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. § 1382c(a)(3)(A). The claimant carries the burden of proving that she is disabled. 20 C.F.R. § 416.912(a).

The Commissioner has promulgated regulations that set forth a five-step sequential process for analyzing disability claims. *See* 20 C.F.R. § 416.920(a)(4). Applying this formula, the ALJ found that Carmack had satisfied the first two steps and proceeded to the third step. A finding of "disabled" will be made at the third step if the claimant can demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001) (quoting 20 C.F.R. § 404.1520(d)). The third step states, in pertinent part, "[i]f you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled." 20 C.F.R. § 416.920(a)(4)(iii). Subpart 12.05 of appendix 1 to subpart P of part 404 defines "mental retardation" as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Subpart 12.05 contains four criteria. A claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (emphasis add-ed). Carmack argues that her case falls within criterion C: "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

Substantial evidence exists to support the ALJ's conclusion that Carmack does not meet the listing for mental retardation. First, the evidence does not support the onset of the "significantly subaverage general intellectual functioning" before age 22. None of Carmack's testing "was contemporaneous with her developmental period." *Foster,* 279 F.3d at 355. The first testing on Carmack occurred in 1998, decades after she turned 22. Not one of the three doctors who examined Carmack concluded that she was mentally retarded at *any* point in her life; to the contrary, Dr. Nevils concluded that Carmack's academic scores were more compatible with her verbal I.Q. score of 75, a score higher than the range of I.Q. scores necessary to satisfy listing 12.05(C). Moreover, Carmack reported to Dr. Nevils that she made "average" marks in high school and received her GED. These facts support the ALJ's finding that Carmack did not suffer from "significantly subaverage general intellectual functioning."

Nor does the evidence demonstrate or support onset of "deficits in adaptive functioning" before age 22. *See Foster,* 279 F.3d at 355. Carmack's work history, which demonstrates her ability to perform complex tasks, belies her claim of mental retardation. Ownership of the tanning salon required Carmack to keep the books, manage the business, use the adding machine, and take appointments. After quitting the tanning business, Carmack was able to put the tanning beds up for sale. At one point Carmack was employed as a

court reporter which, at a minimum, requires proficiency in stenography and the capacity to concentrate for long periods of time. Carmack's ability to manage her own finances and her average academic record provide further proof that she has no "deficits in adaptive functioning." Substantial evidence clearly supports the ALJ's conclusion that Carmack is not mentally retarded.

■ Carmack next argues that the Commissioner failed to carry his burden of proof on the fifth step, which requires the Commissioner to prove that the claimant can perform other forms of work. Carmack complains that the ALJ did not advise a vocational expert witness that Carmack's intellect was in the bottom 2% of the population when posing a hypothetical that asked the expert what other jobs Carmack could perform. According to Carmack, this omission caused the vocational expert to give an incorrect answer. As we will explain, even assuming that the ALJ was required to include her IQ score, any errors that the ALJ made as part of his step-five analysis are completely inconsequential because Carmack did not prove that she cannot do her past relevant work, which is required by step 4.

If the claimant does not show that she is "disabled" under the third step, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. 20 C.F.R. § 404.1520(e). The ALJ made two findings in this regard: that 1) Carmack's past relevant work as a tanning salon operator did not require the performance of work related activities precluded by Carmack's limitations; and 2) Carmack's impairments do not prevent her from performing her past relevant work. Because Carmack has not challenged these findings in her brief, she has not shown that the ALJ's conclusion that she failed to satisfy the fourth

step is unsupported by substantial evidence. Under the fourth step, claimants who can still perform their past relevant work are deemed not disabled regardless of whether they have a meritorious argument on the fifth step. 20 C.F.R. § 404.1520(a)(4)(iv) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we need not go on to the next step.... If you can still do your past relevant work, we will find that you are not disabled"); *see also Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). Accordingly, whether the Commissioner failed to carry her burden of proof on step five is irrelevant.

Because the ALJ's finding that Carmack is not disabled is supported by substantial evidence, we AFFIRM the order of the district court.