NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0743n.06
Filed: October 17, 2007

No. 07-5132


UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


JAMES C. ADKINS,

     Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

                                                   /


**BEFORE:**     MARTIN, GUY, and CLAY, Circuit Judges.

     **CLAY, Circuit Judge.**  Plaintiff James C. Adkins appeals the district court's grant of summary judgment in favor of Defendant Commissioner of Social Security in this action, under 42 U.S.C. § 405(g), to obtain judicial review of a decision from an Administrative Law Judge ("ALJ") denying Plaintiff's application for disability insurance benefits. Specifically, Plaintiff alleges that the ALJ improperly relied on the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P. App. 2, in establishing that his nonexertional limitations did not prevent him from doing work. We agree. Accordingly, we **REVERSE** the decision of the district court and **REMAND** this case for further review by the ALJ.

**BACKGROUND**

Plaintiff, a 42 year-old man with a ninth grade education, has worked as a saw mill worker, a scrap wire worker, a press operator, a dish washer, a welder, a conveyor operator, a truck un-loader and an odd jobs man. He suffers from severe lumbar disc disease and arthritis in his left knee. On April 25, 2003, Claimant filed for disability benefits, claiming numbness in his legs and lower back, muscle weakness and light headedness.

Additionally, two psychologists have diagnosed Plaintiff with "borderline intellectual functioning." (Tr. 18, 20). In connection with an earlier application for benefits, Plaintiff first had an evaluation with William Lynne, M.S. ("Lynne"), a certified psychologist, on December 28, 1998.[1] In addition to diagnosing several mental health disorders,[2] Lynne found that Plaintiff has a Full Scale IQ of 77, Verbal IQ of 76, and Performance IQ of 80, scores which place him in the "mildly retarded range." (Tr. 171) Lynne's report is corroborated by the March 2, 2005 diagnosis of Dr. Timothy J. Carbary. Like Lynne, Dr. Carbary found that Plaintiff suffers from several mental health disorders, including "major depressive disorder" and "generalized anxiety disorder." Dr. Carbary's report also found similarly low IQ scores, a Verbal IQ of 85, a Performance IQ of 73, and a Full Scale IQ of 77.

At the request of the government, two additional psychologists evaluated Claimant, and determined his mental disorders to be "not severe." The only record of their evaluation, however,

---

[1] This earlier application for disability benefits is not at issue in this case.

[2] Lynne diagnosed Plaintiff with "polysubstance dependence – in remission, by self report. Mixed adjustment features. [ ] Borderline intellectual functioning. Antisocial traits . . . . Psychosocial stress: relational problem; recovery from substance dependence; remote – chaotic/inadequate childhood scenario." (Tr. 173) (formatting added)

is contained on standardized forms on which they did little more than check boxes placing the Claimant into categories such as "12.04 Affective Disorders" or "2. Impairment(s) Not Severe." (Tr. 229, 244). Neither government psychologist provided any narrative description of their method for selecting which boxes to check, nor did they provide any reasons for their decisions. Claimant was also examined by a non-psychiatric physician, who found him to be polite, pleasant and able to relate his own medical history.

As part of his application for benefits, Claimant completed a questionnaire on his prior work history. Claimant listed several menial jobs on this form, including "saw mill worker," "scrap wire worker," "truck unloader" and "dish washer." (Tr. 132). Claimant also checked boxes indicating that some of these prior jobs involved "technical knowledge or skills," or that he "d[id] any writing, complete[d] reports, or perform[ed] duties like this." (Tr. 133, 134, 135, 137, 138). The questionnaire did not ask Claimant to elaborate on the nature of these tasks, and there is no indication in the record that the Claimant even understood what he was being asked.

Similarly, Claimant also indicated in a questionnaire concerning his "activities of daily living" that he "go [sic] to the store," that he performs housework and "odd jobs," and that he "go to the lybrary [sic] once or twice a week for movies or books." (Tr. 128-30).

In weighing this evidence, the ALJ reached two important findings. First, the ALJ found that Claimant's borderline intellectual functioning, in addition to his two physical impairments, were "severe medically determinable impairments" for purposes of determining Claimant's eligibility for benefits. (Tr. 18). Second, the ALJ found that Claimant is "unable to perform any of his past

relevant work." (Tr. 23). Nevertheless, the ALJ also concluded that Plaintiff "has the residual functional capacity to perform substantially all of the full range of sedentary work," and thus determined that Plaintiff is "not disabled." (Tr. 23).

## DISCUSSION

The sole issue in this appeal is whether or not substantial evidence supports the ALJ's finding that Plaintiff is not disabled.

### *Standard of Review*

When reviewing a finding that Plaintiff is not disabled under the Social Security Act ("the Act"), this Court considers whether the decision is supported by substantial evidence and whether the ALJ employed the proper legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir.1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 237-38 (6th Cir. 2002); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

### *Analysis*

**A.**     **Legal Framework**

To be considered disabled under the Act, a person must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Foster v.*

*Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Under 42 U.S.C. § 1382c(a)(3)(B):

> an individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B). While it is normally true that "Plaintiff has the ultimate burden of establishing the

existence of a disability," *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.

1993), a plaintiff may shift this burden of proof to the government by establishing certain facts. This

burden shifting process was described by this Court in *Foster v. Halter*:

> [t]he claimant must first show that she is not engaged in substantial
> gainful activity. Next, the claimant must demonstrate that she has a
> "severe impairment." A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment." If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she is
> incapable of performing work that she has done in the past. Finally,
> if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity,
> must be considered to determine if other work can be performed. *The*
> *burden shifts to the Commissioner at this fifth step to establish the*
> *claimant's ability to do other work.*

279 F.3d at 354 (citations omitted) (emphasis added); *see also* 20 C.F.R. § 404.1520. "The fifth and

final step in the sequential evaluation process requires proof of specific jobs that the claimant can

perform, not proof of a generic capacity to do heavy, light, or sedentary work . . . ." *Allison v. Comm'r of Social Sec.*, No. 96-3261, 1997 WL 103369, at *3 (6th Cir. March 6, 1997) (unpublished opinion); *see also Hephner v. Mathews*, 574 F.2d 359, 362-63 (6th Cir.1978) (holding that "a claimant's capacity to perform work" must be expressed "in terms of specific types of jobs").

A severe impairment under the Act may be rooted in an exertional or nonexertional limitation. Nonexertional limitations "encompass mental, sensory, or environmental limitations." *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 772 (6th Cir. 1987). Whether a claimant suffers from exertional or nonexertional limitations is important because it determines the degree of evidence necessary to establish that a claimant is capable of doing work. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981). When a claimant suffers only from exertional limitations, the ALJ may rely on the formulas contained in the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P. App. 2, to determine whether or not that claimant is disabled.[3] *Kirk*, 667 F.2d at 528-29. When a claimant suffers from a nonexertional limitation, however, the ALJ may not rely on the Medical Vocational Guidelines, and must instead rely on a vocational expert or similar evidence to establish that work is available to a claimant. *Id.*

**B.    The ALJ's Decision**

---

[3]The Medical-Vocational Guidelines "are a shortcut that eliminate the need for calling in vocational experts," *Hurt v. Sec'y of Health and Human Servs.*, 816 F.2d 1141, 1142 (6th Cir. 1987), and consist largely of grids which consider a claimant's age, education and previous work experience. 20 C.F.R. pt. 404, subpt. P. App. 2, Tbl. 1-3. When a claimant falls within one of the patterns contained in these grids, the grid "announce[s] that substantial gainful work in the national economy is available for that particular individual." *Hurt*, 816 F.2d at 1142.

The ALJ found, and the government does not contest, that Plaintiff has met the first four steps described by this Court in *Foster*. (*See* Gov't Br. at 15) ("The only issue now on appeal is [whether] the ALJ erroneously applied the rules in the Medical Vocational Guidelines instead of using vocational expert (VE) testimony when he found Claimant not disabled at the fifth step of the sequential evaluation."). Accordingly, this case rests solely upon the fifth stage of the inquiry, whether or not the government has produced substantial evidence showing that jobs exist in the national economy which Plaintiff can perform.

The ALJ acknowledged that "[o]nce the claimant has established that he has no past relevant work or cannot perform his past relevant work because of his impairments, the burden shifts to the Social Security Administration to show there are other jobs existing in significant numbers in the national economy that the claimant can perform . . . ." (Tr. at 21). Nevertheless, he relied on an inappropriate means for determining that the government had met this burden.

Rather than hear the testimony of a vocational expert, the ALJ instead turned to the "Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations." (*Id.*) This Court held in *Kirk v. Sec'y of Health and Human Servs.*, however, that those Guidelines may only be relied upon in the absence of a severe nonexertional impairment. 667 F.2d at 528-29. As the ALJ also found that Plaintiff's borderline intellectual functioning was just such a severe impairment, the ALJ's complete reliance on the Guidelines to determine that Plaintiff is not disabled was inappropriate.

The government does not suggest in its brief any alternative grounds which would support a finding that jobs are available to claimant, instead relying on generalities about the U.S. economy.

Citing to the Medical-Vocational Guidelines excluded from this case by *Kirk*, the government alleges that "approximately 200 unskilled sedentary occupations are identified in the rules." (Gov't Br. at 23) (citing 20 C.F.R. pt. 404, subpt. P. App. 2 § 201.00 (a) & (b)). Similarly, the government relies on claimant's statements that he performed "odd jobs" at home, ran errands, shopped in stores and carried on other normal tasks. (Gov't Br. at 24). The government offers no additional proof, however, that jobs are available to people who shop in stores or run errands in the manner which claimant previously has done. While it may be true that "approximately 200 unskilled sedentary occupations" exist in the U.S. economy, the burden is on the government to demonstrate that Plaintiff can do at least one of them. *Foster*, 279 F.3d at 354.

The government does list a menu of skills which it claims claimant possesses, including the ability to do simple math, to read and to write. (Gov't Br. at 25). These skills are certainly useful to a person in the workplace, but the government has presented no evidence that they are *sufficient* for any jobs. In order to meet its burden of proof, the government must introduce some evidence that some job exists which a person with claimant's condition and skill-set could perform. *Allison*, 1997 WL 103369, at *3; *Hephner*, 574 F.2d at 362-63.

Finally, the government argues that Plaintiff has admitted to having some advanced skills, and holds these skills out as evidence that he could do "simple, routine, unskilled jobs." In making this argument, however the government relies on Plaintiff's "Work History Report," a standardized form filed along with his disability claim. (Govt' Br. at 24) While it is true that Plaintiff checked boxes on this form indicating that he once held jobs in which he "use[ed] technical knowledge or

skills" and "complete[ed] reports," (Tr. 133-38), there is no evidence in the record that Plaintiff even understood the significance of these boxes before checking them. Simply put, when a person with borderline intellectual functioning checks a box on a standardized form indicating that he has previously performed technical skills, this is exceptionally weak evidence that he is actually capable of performing a new job.

When an ALJ finds that a claimant has a severe impairment, and that the claimant is unable to perform any of his past relevant work, the burden of proof shifts to the government to determine that other jobs exist which that claimant is capable of performing. *Foster*, 279 F.3d at 354. That burden cannot be met by relying solely on the Medical-Vocational Guidelines when the severe impairment is rooted, even in part, in a nonexertional limitation. *Kirk*, 667 F.2d 528-29. Furthermore, this burden requires the government to do more than rattle off a list of skills which it believes the claimant possesses. Rather, the government's burden is to connect the dots between the claimant's actual capacity and an actual job in the U.S. economy. *See Allison*, 1997 WL 103369, at *3 ("The fifth and final step in the sequential evaluation process requires proof of specific jobs that the claimant can perform, not proof of a generic capacity to do heavy, light, or sedentary work . . . ."); *Hephner*, 574 F.2d at 362-63 (holding that "a claimant's capacity to perform work" must be expressed "in terms of specific types of jobs"). The government did not do so here, and so we cannot hold that the ALJ's decision to deny benefits was supported by substantial evidence.

**CONCLUSION**

The ALJ erred in denying an award of benefits to Plaintiff based solely on the Medical-Vocational Guidelines. Accordingly, we **REVERSE** the decision of the district court granting summary judgment to Defendant and **REMAND** this case for additional proceedings consistent with this opinion.