**Betty TATE o/b/o Julian
L. Tate, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL
SECURITY, Defendant.**

**No.  CIV.A. 04CV70115DT.**

United States District Court,
E.D. Michigan,
Southern Division.

April 18, 2005.

Victor L. Galea, Sr., Flint, MI, for Plaintiff.

Vanessa Miree Mays, Detroit, MI, for Defendant.

*OPINION AND ORDER ACCEPTING AND ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

FRIEDMAN, Chief Judge.

This matter is presently before the court on cross motions for summary judgment. Magistrate Judge Mona K. Majzoub submitted a report and recommendation in which she recommends that the court deny plaintiff's motion and grant defendant's motion. Plaintiff filed timely objections to this recommendation and defendant responded to plaintiff's objections.

The court reviews *de novo* those portions of the magistrate judge's report and recommendation to which a specific objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). For the reasons stated below, the court shall deny plaintiff's objections, accept the report and recommendation, deny plaintiff's motion for summary judgment, and grant defendant's motion for summary judgment.

■ In reviewing a denial of social security disability insurance benefits, the court's role is limited under 42 U.S.C. § 405(g), to determining whether defendant's decision is supported by substantial evidence. In making this determination, the court does not review the evidence *de novo*, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence also would have supported a contrary decision, and even if the court might have decided the case differently in the first instance.

In this case, Betty Tate seeks childhood Supplemental Security Income ("SSI"), on behalf of her minor son, Julian Tate ("plaintiff"). Plaintiff claims that he is disabled due to attention deficit hyperactivity disorder ("ADHD") and borderline

intellectual functioning. Plaintiff's application for SSI was denied initially, on reconsideration, and by an Administrative Law Judge ("ALJ") following a hearing. The Social Security Appeals Council refused to review the ALJ's decision and plaintiff commenced the instant action.

The evidence in this matter is fully summarized in the magistrate judge's report and recommendation, the parties' summary judgment motions, and the ALJ's decision. Therefore, the evidence need not be fully repeated here. Briefly, plaintiff Tate was born on October 26, 1991, and he was eight years old when his mother applied for SSI benefits on his behalf. At the time of the administrative hearing, plaintiff met with a therapist every two weeks, and he was taking Ritalin, Zoloft, and Depakote to control his symptoms. Tr. 200. Testimony at the hearing established that plaintiff experienced behavior and learning problems. Tr. 128–235. Although plaintiff attended the second grade, he functioned at a kindergarten level and he was suspended from school several times. Plaintiff's teachers reported that he had difficulty concentrating and interacting with the other students. Tr. 89–90.

Medical evaluations and testimony indicated that plaintiff suffered from broad functional limitations in cognitive, communicative, and social functioning. Tr. 101–104; 112–115. Plaintiff scored 50 on a Global Assessment of Functioning test indicating a serious impairment, or serious symptoms pertaining to social, occupational, and school functioning. Plaintiff's Wechsler Intelligence tests revealed a full scale IQ score of 76, rendering him in the "borderline range," for intellectual functioning. Tr. 95–96.

After considering all of the evidence and hearing the testimony, including reports by claimant's mother, teachers, and doctors, the ALJ concluded that Tate was not disabled within in the meaning of the So-cial Security Act. The record confirmed "some cognitive, social, and concentration and persistence problems." Tr. 23. However, plaintiff's impairments, "either alone or in combination, were not functionally equivalent to the requirements of the listed impairments in Appendix 1 of 20 C.F.R. pt. 404, subpt. P, Appendix 1; 20 C.F.R. § 416.920(f)." *See* Tr. 11–24.

Plaintiff and defendant's cross motions for summary judgment request that the court determine whether the ALJ's denial of social security benefits was supported by substantial record evidence. The magistrate judge recommends that the court uphold the ALJ's findings.

Plaintiff generally objects to the magistrate judge's report and recommendation that substantial evidence supported the conclusion that his cognitive impairments and impulsive, hyperactive, and inattentive actions were severe, but not medically or functionally equivalent to the listed impairments set forth in the regulations. *See* 20 C.F.R. § 404, Subpart P, Appendix 1.2 C.F.R. § 416.924(d). *See also* Report and Recommendation at 8–11. The relevant medical listings for plaintiff's conditions are § 112.05 for mental retardation and § 112.11 for ADHD.

■ Plaintiff's objections lack merit because both the ALJ and the magistrate judge reviewed the evidence presented by plaintiff in great detail. The ALJ's findings were sufficiently specific to support the conclusion that plaintiff was not impaired to the point of disability due to mental retardation or ADHD. Further, plaintiff's objections are nearly identical to the arguments set forth in the brief in support of plaintiff's motion for summary judgment.

■ "Plaintiff has the ultimate burden of establishing the existence of a disability." *Casey v. Secretary of Health and*

*Human Services,* 987 F.2d 1230, 1233 (6th Cir.1993). In order to qualify for childhood SSI, plaintiff must establish that he suffers from a medically determinable physical or mental impairment, resulting in marked and severe functional limitations. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). "A claimant must demonstrate that [the] impairment satisfies the diagnostic description for the listed impairment in order to be found disabled hereunder." *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001).

Plaintiff objects to the magistrate judge's recommendation that substantial evidence established that plaintiff's impairments do not meet or equal subsection D or subsection E in the listings of § 112.05. Sections D and E of the listings generally require that claimant demonstrate: (1) significant or marked sub-average intellectual or cognitive capabilities; and (2) a separate, distinct condition which places further significant limitations on him. *See* Report and Recommendation at 10.

Specifically, plaintiff objects to the magistrate judge's adoption of the ALJ's "same absurd reasoning" and failure to question the validity of plaintiff's verbal IQ score of 64. Obj. at 1–4. Plaintiff's verbal IQ score of 64 is the primary evidentiary basis for plaintiff's assertion that he is disabled and entitled to SSI benefits. Plaintiff contends that his verbal IQ score is an impairment which medically equals the listings in § 112.05 because it falls within the range listed in subsections D and E of § 112.05.

The court rejects this objection because the ALJ properly questioned the validity of plaintiff's IQ scores, and the magistrate judge's report and recommendation also thoroughly analyzed the ALJ's conclusions, regarding plaintiff's IQ scores. As the report and recommendation states:

> [p]laintiff argues that the "ALJ never questioned the validity of this score...." To the contrary, the ALJ

does address the validity of the test score stating: "The undersigned further notes while claimant recently obtained a verbal IQ score of 64, that the claimant's school records do not indicate that claimant functions at that low of a level ...."The ALJ also properly relied on ... psychological evaluations .... [which] assessed a verbal IQ score of 77, a performance IQ score of 78 and a full scale IQ of 76 .... These scores, according to Dr. Joenig–Forbis, fall in the borderline range of intellectual abilities. Dr. Koenig–Forbis also noted that Plaintiff's academic scores were commensurate with the IQ scores. Dr Tien ... concurred with these findings.

Report and Recommendation at 11–12. For these reasons, the magistrate judge properly concluded that substantial evidence indicated that plaintiff's verbal IQ score was only an indication of a *learning disability,* and not an indication of *mental retardation.* No evidence, other than the 64 verbal IQ score was produced to draw a conclusion that plaintiff was disabled due to mental retardation.

The court finds that the magistrate judge did *not* "uncritically adopt[ ]" defendant's conclusion that plaintiff was not mentally retarded nor disabled. Obj. at 3. Substantial evidence and case law supports the magistrate judge's careful analysis and recommendation in this matter. Therefore, both the ALJ and the magistrate judge properly concluded that although plaintiff was diagnosed as borderline intellectual functioning, he was never diagnosed with mental retardation.

Plaintiff also objects to the ALJ's conclusion that his ADHD was not disabling since it did not meet or functionally equal the criteria of listing § 112.05, which the magistrate judge "uncritically accepted." Obj. at 6. The eport and recommendation contained a detailed analysis of § 112.11.

*See* Report and Recommendation at 12–16. Plaintiff's objections do not point to a specific error in the magistrate judge's report and this court adopts that report and recommendation in its entirety because the evidence shows that the ALJ's conclusions pertaining to plaintiff's ADHD were based on substantial evidence.

The ALJ reviewed the medical record and found that although "there is some indication of inattention, impulsiveness and hyperactivity, none of these characteristics are markedly or persistently displayed." Tr. 17. This conclusion is supported by the psychological evaluation performed by Dr. Koenig–Forbis, who noted that while plaintiff was often distracted, he was easily redirected. Moreover, this observation was made before plaintiff began taking Ritalin, which the record indicates has positively impacted plaintiff's behavior. Further, in a report prepared by plaintiff's teacher, Jennifer Ponton, she noted that after plaintiff began taking his Ritalin he was able to work somewhat independently and was "finally feeling a sense of belonging and accomplishment." Tr. 89–90. Therefore, the ALJ's conclusion that plaintiff failed to meet the listings of § 112.11, was supported by both the hearing testimony and the documents included in the record.

The court has thoroughly reviewed the entire administrative record, the magistrate judge's report and recommendation, and the parties' briefs. Despite plaintiff's complaints of severe disability and severe impairments, the court is persuaded that defendant's decision denying SSI is supported by substantial evidence. Accordingly,

IT IS ORDERED that Magistrate Judge Majzoub's Report and Recommendation is accepted and adopted in its entirety as the findings and conclusions of the court.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted.

### *REPORT AND RECOMMENDATION*

MAJZOUB, United States Magistrate Judge.

*RECOMMENDATION:* This Court recommends that Plaintiff's Motion for Summary Judgment be DENIED, and that of Defendant GRANTED, as there was substantial evidence on the record supporting the Commissioner's determination denying childhood disability benefits.

\*   \*   \*   \*   \*   \*

Plaintiff Julian Tate is a minor male child who is now thirteen years old. His mother, Betty Tate, applied for Childhood Supplemental Security Income (SSI) benefits on his behalf on October 5, 1998 alleging that he had been disabled due to attention deficit hyperactivity disorder (ADHD) and borderline intellectual functioning. (Tr. 28a) Benefits were denied initially and upon reconsideration by the Social Security Administration (SSA) A requested *de novo* hearing was held on December 9, 1999 before Administrative Law Judge (ALJ) William J. Musseman, who subsequently found that the claimant was not entitled to benefits because his impairments were not severe enough to meet or medically equal any of those found in the Listing of Impairments. (Tr. 24) The Appeals Council declined to review the decision of the ALJ and Plaintiff commenced the instant action for judicial review. (Tr. 5–7) The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits is supported by substantial evidence on the record.

Plaintiff was eight years old at the time of the administrative hearing. His moth-

er, Betty Tate testified that Plaintiff was recently placed in special education classes at school because he was having difficulty keeping up with the class. Plaintiff was also experiencing severe behavioral problems at home and at school. His mother testified that he was expelled from school for "hitting the kids, disrupting the class." (Tr. 198) The school recommended that Plaintiff receive counseling. At the time of the hearing, Plaintiff had been seeing a therapist every two weeks for almost two years. He was taking Zoloft, Ritalin and Depakote for his symptoms. (Tr. 200) His mother testified that the medications had improved his behavior and school work briefly but he still has difficulties. Plaintiff was unable to do his homework independently and he was unable to tell time. He did not know his phone number or address. His mother testified that Plaintiff was unable to take care of his personal needs. He required help brushing his teeth, bathing and dressing. Plaintiff also did not socialize well. He has been disciplined at school for fighting. He is no longer invited to play with the other children. Plaintiff did not testify at the hearing.

The medical evidence contained in the record indicates that Plaintiff underwent a child intake evaluation at Insight on July 16, 1998. The initial diagnosis was oppositional defiant disorder and ADHD (rule out). Plaintiff was assessed a GAF score of 50 [1]. Plaintiff presented a number of complicated clinical problems which included temper outbursts, significant behavioral problems at school, and learning problems. The therapist concluded that the focus of the treatment would be further assessment of these problems and an attempt to rule out a mood disorder, learning disability and ADHD. (Tr. 128–35) On April 20, 1999 Insight progress notes indicate that Plaintiff's mother reported that Plaintiff had been suspended from school for head butting and disturbing the class. Plaintiff was also biting his fingers until they bled. (Tr. 144) On June 11, 1999 Insight progress notes indicate that Plaintiff's mother reported that Plaintiff was again suspended from school, this time for inappropriate touching and inappropriate language. The teacher was unable to verify the two incidents. Plaintiff continued to have an anger management problem. (Tr 146) Progress notes on August 23, 1999 indicated Plaintiff's condition remained unchanged. Plaintiff continued to have nightmares. Insight records reveal that Plaintiff missed appointments and at one point was without his medication for three weeks. (Tr 107, 137, 143, 145, 149, 152, 157)

On November 1, 1998 Nancy Koenig–Forbis, Ph.D., LLP, performed a full psychological evaluation of Plaintiff. Dr. Koenig–Forbis administered numerous tests, including WISC–IQ tests. Intelligence testing revealed that Plaintiff had a verbal IQ of 77, a performance IQ of 78, and a full scale IQ of 76, which placed Plaintiff in the borderline range of intellectual testing. Plaintiff's mother reported that Plaintiff had behavior problems which included hitting his head on the floor, temper tantrums, and sudden outbursts. Plaintiff did not get along with other children and had been suspended from school several times. Dr. Koenig–Forbis noted that Plaintiff was cooperative, polite, but had difficulties with psychomotor agitation. He was wiggly and easily distracted. His articulation was

1. Global Assessment of Functioning represents the examiner's judgment of the individual's overall level of psychological functioning. American Psychiatric Ass'n, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed.2000). The Global Assessment of Functioning (GAF) scale considers psychological, social and occupational functioning of mental health on a scale of 0–100. A score of 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. *Id* at 34.

quiet but normal, and did not exhibit any unusual depression, anxiety or stress. Dr. Koenig–Forbis diagnosed Attention Deficit Hyperactivity Disorder (ADHD), combined type and borderline intellectual functioning. Dr. Koenig–Forbis also assessed a GAF score of 50. (Tr. 91–100)

On November 16, 1998, Debra Edwards, Plaintiff's teacher reported that Plaintiff was in the second grade but functioned at the kindergarten level and had a short attention span. He was in regular classes. Ms. Edwards noted that Plaintiff did not understand how to do many of the assignments even after individualized instruction. On June 16, 1999 Flint Community Schools performed an Individualized Educational Plan for Plaintiff. WISC–III tests were administered which revealed a full scale IQ of 71, verbal IQ of 64, and a performance IQ 82. The multidisciplinary evaluation team report found that Plaintiff has a severe discrepancies between the age appropriate achievement and Plaintiff's achievement in five of seven categories including basic reading, reading comprehension, listening comprehension, mathematics calculation and mathematics reasoning. On the basis of these test results, Flint Community Schools placed Plaintiff in special education classes for twenty-five of the thirty hours in the school week.

On December 4, 1998 H.C. Tien, M.D. reviewed the medical record and prepared a Childhood Disability Evaluation Form.

Dr. Tien noted that the medical record established that Plaintiff suffered from ADHD and borderline intellectual functioning. Plaintiff suffered from broad functional limitations in cognitive/communicative functioning, social functioning, and concentration, persistence or pace. The degree of limitation in these areas was less than marked. Dr. Tien found that Plaintiff's impairments were severe but did not meet or equal the listing of impairments. (Tr. 101–104) This evaluation was reconsidered in April 1999 with similar results. (TR 112–115)

An undated report by Jennifer Ponton, Plaintiff's third grade teacher, indicated that Plaintiff had a difficult time interacting with some of the students in the room. He could not handle any type of change in the classroom schedule. He had a difficult time accepting any situation in which he is not the center of attention. He was disciplined at school for stabbing another student with a paper clip. Ms. Ponton noted that Plaintiff's behavior had improved recently. Plaintiff was working hard and finally feeling a sense of belonging and accomplishment. (Tr. 89–90)

*MEDICAL EVIDENCE SUBMITTED AFTER THE ADMINISTRATIVE HEARING*

Plaintiff submitted additional evidence to the Appeals Council, which was not part of the administrative record upon which the ALJ relied.[2] This additional evidence

---

**2.** There is a split of authority among the circuit courts of appeal regarding whether a district court may review new evidence submitted to the Appeals Council when the Appeals Council has ultimately decided to deny a request for review of the ALJ's decision. The Courts of Appeal for the First, Third, Sixth, Seventh and Eleventh circuits have decided that the court is limited to the record before the ALJ. *Mills v. Apfel,* 244 F.3d 1, 5 (1st Cir.2001); *Matthews v. Apfel,* 239 F.3d 589, 593–94 (3d Cir.2001); *Falge v. Apfel,* 150 F.3d 1320, 1323 (11th Cir.1998); *Eads v. Sec-*

*retary of Dept. of Health & Human Servs.,* 983 F.2d 815, 817–18 (7th Cir.1993); *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). The Courts of Appeal for the Second, Fourth, Eighth, Ninth and Tenth circuits hold that new evidence submitted to the Appeals Council becomes part of the administrative record to be considered by the court in its substantial evidence review. *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996); *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir.1994); *Riley v. Shalala,* 18 F.3d 619, 622 (8th Cir.1994); *Ramirez v. Shalala,* 8 F.3d 1449, 1454 (9th Cir.1993). To

consisted of records from Flint Community Schools.

In 1999 Plaintiff was disciplined at school for unacceptable behavior on a number of occasions. On June 1, 1999 Plaintiff was suspended for three days for using inappropriate language with a female student. On June 11, 1999 Plaintiff was suspended for three days for throwing and hitting a student with a pencil. On October 4, 1999 Plaintiff was suspended for three days for possessing a homemade weapon (paper clip) and hitting another student in the mouth. On November 17, 1999 Plaintiff was denied lunchroom privileges for throwing milk in the lunchroom. (Tr 160–61)

In March 2000 Plaintiff was disciplined frequently for unacceptable behavior. On March 9, 2000 Plaintiff's mother was contacted because Plaintiff was causing "continuous classroom disruptions." On March 31, 2000 Plaintiff was suspended for one day for inappropriately touching a female student. A general classroom behavior form was filed on March 31, 2000 indicating the following behaviors applied to Plaintiff: destroys property, cries easily/frequently, gives up easily, needs frequent redirection to complete task, teases, verbally aggressive, daydreaming, rebellious, easily distracted, careless and uncaring, and has difficulty waiting for turn. (Tr. 161)

On March 21, 2000 Ms. Ponton, Plaintiff's special education teacher, wrote a letter indicating her concern about Plaintiff's recent change in behavior. In the letter she states:

> I notice a swift change in Julian's behavior the last few weeks. He has been demonstrating violent behaviors. I am concerned about the safety of the other students in my classroom. Julian has been suspended two times in the last three weeks of school. If he is suspended again, he will be in jeopardy of having a new IEPC meeting to determine if my classroom is the appropriate placement for him.

(Tr.183)

On May 5, 2000 Plaintiff was suspended for four days for fighting on the playground.

### ADMINISTRATIVE LAW JUDGE'S DETERMINATION

After finding that the claimant had never performed substantial gainful activity, the ALJ determined that he was impaired as a result of attention deficit hyperactivity disorder and borderline intellectual functioning, but the conditions, either singly or in combination, were not severe enough to meet, or medically equal to those found in the Listing of Impairments. Moreover, the ALJ found that claimant's impairments did not "functionally equal" either Listing because the medical problems stemming from the disorders had not resulted in disabling functional limitations affecting his motor, cognitive/communicative, social, personal development or concentration, persistence, or pace.

### STANDARD OF REVIEW

■■■ Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). The standard of review of is deferential, and the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

date, the Fifth Circuit has not had an opportunity to decide the issue. *See Masterson v.*

*Barnhart*, 309 F.3d 267, 274 n. 3 (5th Cir. 2002).

" 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir.1981)(quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir.1984)(internal quotes and citations omitted). *See also Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000). If the Commissioner's determination is not supported by substantial evidence on the whole record, the administrative decision must be reversed and the case remanded for further action. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 242–43 (6th Cir.2002). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Walters,* 127 F.3d at 528. It is not the function of this court to try cases *de novo,* or resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984).

## DISCUSSION AND ANALYSIS

In order to establish a right to Social Security benefits, a child must prove that he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations. 42 U.S.C. § 1382c(a)(3)(C)(i). Analysis of a child's claim of disability requires three sequential steps 20 .C.F.R. § 416.924(a).

(1) whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b);

(2) whether the child's impairments are "severe." 20 C.F.R. § 416.924(c);

(3) whether the child's impairments are medically or functionally equal in severity to the listed impairments set forth in the Commissioner's disability regulations, 20 C.F.R. § 404, Subpart P, Appendix 1. 2 C.F.R. § 416.924(d).

Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a) A child's impairment is functionally equal to a listed impairment if there is an "extreme" limitation in one of six specific functional domains, or a "marked" limitation in at least two domains. 20 C.F.R. § 416.926a. Domain analysis considers the child's age-appropriate functioning in relation to acquiring and using information, attending and completing tasks, interacting and relating with others, moving around and manipulating objects, caring for oneself, and health and physical well being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. 416.926a(d). A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R.

§ 419.926a(e)(3). An extreme limitation is one that "interferes very seriously with [a child's] ability to independently sustain or complete activities." 20 C.F.R. § 416.926a(e)(3).

In his brief, Plaintiff argues that that the ALJ erred as a matter of law in finding that Plaintiff's impairments did not meet or equal Listing 112.05 for mental retardation, or Listing 112.11 for attention deficit hyperactivity disorder. Specifically, Plaintiff contends that the ALJ improperly evaluated the objective medical evidence and Plaintiff's symptoms when he determined that Plaintiff failed to meet the criteria in either of the Listing. Plaintiff further argues that it was error on the part of both the ALJ and the Appeals Council to ignore certain evidence submitted after the administrative hearing as it allegedly tended to support a finding that Plaintiff suffered marked impairment of social functioning, personal functioning and concentration, persistence or pace. This evidence, Plaintiff contends, was relevant, material, and new and thus he has asked this Court to either grant his Motion for Summary Judgment, or, in the alternative, grant his Motion to Remand for further consideration of such evidence (Plaintiff's Brief at 14). Having reviewed all of the evidence of record, the undersigned is persuaded that the decision of the ALJ, finding Plaintiff was not disabled, is supported by substantial evidence for the following reasons.

In this case, the parties initially focus on Listing 112.05—mental retardation in a child. According to the diagnostic definition of this provision, mental retardation is "characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. pt. 404, subpt. p., app. 1, § 112.05. An individual possesses the required level of severity for this disorder if he meets one of the six subparts or criteria enumerated under the diagnostic definition. *Id.* Subparts (D) and (E) of Listing 112.05, the criteria upon which Plaintiff relies, require a claimant to demonstrate: he has either "valid verbal, performance, or full scale IQ of 60 through 70", § 112.05(D), or cognitive/communicative functioning, gross or fine motor development, or social functioning, documented by medical findings, at a level generally achieved by children no more than one-half the child's chronological age. § 112.05(E) (incorporating by reference § 112.02(B)(2)(b), (B)(2)(c) and (B)(2)(d)) and "a physical or other mental impairment imposing additional and significant limitation of function." 20 C.F.R. pt. 404, subpt. p., app. 1, §§ 112.05(D) & (E). In general terms, then, subparts (D) and (E) require a claimant to demonstrate that he has: (1) significant or marked subaverage intellectual or cognitive capabilities; *and* (2) some separate and distinct condition that places further significant limitations on him.[3]

---

**3.** 20 C.F.R. pt. 404, subpt p, app.1, § 112,-92B(2) reads as follows, in pertinent part: For children (age 3 to attainment of age 18)...

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

d. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner.

The Commissioner argues at length that in order to meet any of the subsections of Listing 112.05, Plaintiff must, as an initial matter establish that he was "properly considered mentally retarded". (Defendant's Brief in Support of Motion for Summary Judgment, p. 8) On this point the regulations are specific. Plaintiff must demonstrate that his impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder. 20 C.F.R. pt. 404, subpt. p, app. 1 § 12.00(A) ("Specific symptoms, signs, and laboratory findings in the paragraph A criteria of any of the listings in this section cannot be considered in isolation from the description of the mental disorder contained at the beginning of each listing category."); *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984) (holding that a lack of evidence to support the requirements of Listing 1.05(C) provided substantial evidence that the claimant was not disabled). As the Commissioner has pointed out, recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only "if [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the six sets of criteria ...." 20 C.F.R. pt. 404, subpt. p, app. 1 § 12.00(A) as amended by 65 Fed.Reg. 50746, 50776 (August 21, 2000) (emphasis added). In a record replete with references to a diagnosis of "borderline intellectual functioning" Plaintiff fails to address how he meets the diagnostic definition of mental retardation.

Instead, Plaintiff argues that his impairments meet or are medically equal to the criteria set forth in Listing 112.05(D) by a verbal IQ score of 64 assessed by Flint Community Schools. Plaintiff argues that the "ALJ never questioned the validity of this score and nothing in the record provides any basis to question its validity." (Plaintiff's Brief in Support of Motion for Summary Judgment, p. 1) To the contrary,

the ALJ does address the validity of this test score, stating:

> The undersigned further notes while the claimant recently obtained a verbal IQ of 64, that the claimant's school records do not indicate the claimant functions at that low of a level. Most recent school records indicate that the claimant after being put on Ritalin and being in special education classes was generally doing well in the classroom and was working hard. There is every indication that the claimant's cognitive functioning will improve in the future.

(Tr. 20)

And indeed, Jennifer Ponton, Plaintiff's special education teacher, notes that "Julian was having a difficult time focusing on any assignment I gave him. He was also having problems remaining in his seat. All of this changed after he began taking his medication." (Tr. 89)

The ALJ also properly relied on the psychological evaluations performed by Nancy Koenig–Forbis, Ph.D. LLP and the Social Security Commission. Dr. Koenig–Forbis assessed a verbal IQ score of 77, a performance IQ score of 78 and a full scale IQ score of 76. These scores, according to Dr. Koenig–Forbis, fall in the borderline range of intellectual abilities. Dr. Koenig–Forbis also noted that Plaintiff's academic scores were commensurate with the IQ scores. (Tr. 99) Dr. Tein, who performed a childhood disability evaluation for the Social Security Commission, concurred with these findings. Dr. Tien found that Plaintiff suffered from the severe impairments of ADHD and borderline intellectual functioning, but that these impairments did not meet, medically equal or functionally equal the severity of a listing. Plaintiff's childhood disability evaluation was reconsidered in April 1999 with the same results. Both reports found that Plaintiff suffered from less than marked limitations

in cognitive/communicative functioning, social functioning and concentration, persistence or pace. Finally, the ALJ noted that at the time of the hearing, Plaintiff was not fidgeting and appeared to have an adequate ability to concentrate. *See* 20 C.F.R. pt. 404, subpt. p., app. 1, § 112.00(D) (2000)(In considering the validity of a test result, any discrepancies between formal test results and the child's customary behavior and daily activities should be duly noted and resolved.) (Tr22) Here, the ALJ reasonably evaluated the record as a whole in finding that Plaintiff did not meet Listing § 112.05.

Next, Plaintiff's argues that the ALJ failed to properly evaluate the evidence of his disability under Listing § 112.11 for ADHD. Listing § 112.11 is manifested by developmentally inappropriate degrees of inattention, impulsiveness and hyperactivity. The required level of severity for these disorders is met when the requirements in both A and B are satisfied. These sections hold in pertinent part:

A. Medically documented findings of all three of the following:

1. Marked inattention; and

2. Marked impulsiveness; and

3. Marked hyperactivity;

B. ... [F]or children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02. *See Infra* note 3.

■ Diagnosis alone is insufficient to satisfy the requirements of any listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). Plaintiff must show that his impairment matches a listing and must meet all of the specified medical criteria. *Id.* If a claimant meets or medically equals a listing, he is per se disabled. *Foster v. Halter,* 279 F.3d 348 (6th Cir.2001)("claimant must demonstrate that her impairment satisfies the diagnostic description for the listed

impairment in order to be found disabled thereunder.") *Martin v. Heckler,* 748 F.2d 1027, 1035 (5th Cir.1984); accord 20 C.F.R. § 416.924(d). Whether an impairment or combination of impairments is equivalent to a listing is a medical question that can be answered only by medical evidence.

Here, the ALJ reviewed the medical record and found that "[a]lthough there is some indication of inattention, impulsiveness and hyperactivity, none of these characteristics are markedly or persistently displayed." (Tr.17) This finding is supported by the psychological evaluation of Dr. Koenig–Forbis which indicated that while Plaintiff was wiggly and often distracted, he was easily redirected. Importantly, Dr. Koenig–Forbis noted that Plaintiff has not yet started medications for ADHD. The positive effects of this medication on Plaintiff's symptoms was specifically noted by his teacher. Ms. Ponton reported that Plaintiff's behavior changed after he began to take his medications. (Tr.89) In particular, Ms. Ponton noted that Plaintiff was able to work "somewhat" independently and was "finally feeling a sense of belonging and accomplishment." (Tr. 89–90) Plaintiff's argument that this improvement on medication "bears no relationship to his lifelong IQ" misses the point. Listing § 112.11 first evaluates whether Plaintiff shows marked inattentiveness, impulsiveness and hyperactivity. Where, as here, Plaintiff fails to meet the criteria for the first prong of the listing, the possible impact of Plaintiff's lifelong IQ on the second prong of the listing is irrelevant. Thus, after a review of the record as a whole, the ALJ reasonably concluded that Plaintiff failed to meet Listing § 112.11 for ADHD.

The ALJ also reasonably concluded that Plaintiff's impairments were not functionally equivalent to the limitations of either Listing § 112.05, mental retardation or

Listing § 112.11, ADHD. If a child has a severe impairment or combination of impairments that does not meet or medically equal any listing, as the ALJ determined in this case, the Commissioner will decide whether Plaintiff has limitations that "functionally equal the listings" of disabling conditions. *See* 20 C.F.R § 416.92a(a). To equal the listings functionally, the impairment or impairments must be of listing-level severity, i.e., result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.*

There are six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

A child has a marked limitation in a domain if the impairment "interferes seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). A marked limitation can also be found if the child has a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on the comprehensive standardized test designed to measure a particular domain. 20 C.F.R. 416.926a(e)(2)(iii). An extreme limitation "interferes very seriously" with such an ability. 20 C.F.R. § 416.926a(e)(3). Additionally, a child can be characterized as having an extreme limitation if his test scores are at least three standard deviations below the mean. 20 C.F.R. § 416.92a(e)(3)(iii).

When evaluating a claimant's ability to function in each domain, the Commissioner asks for and considers the following information. What activities is the child able to perform? What activities is the child unable to perform? Which of the child's activities are limited or restricted com-

pared to other age-equivalent children who do not have impairments? Where does the child have difficulty with activities-at home, in childcare, at school, or in the community? Does the child have difficulty independently initiating, sustaining, or completing activities; What kind of help does the child need to do activities, how much help is needed, and how often is it needed? 20 C.F.R. § 416.926a(b)(2)(i)-(v).

These questions are not, singularly or as a whole, the only factors useful to determining whether or not a child has a "marked" or "extreme" limitation 20 C.F.R. § 416.92a(e)(2)(iv). If applicable, test scores can be used in combination with other factors, observations and evidence to determine the level of impairment. *Id.* "Marked" or "extreme" limitations as defined by test scores are not automatically conclusive if additional evidence in the record shows a pattern of behavior inconsistent with test scores. See 20 C.F.R. § 416.926a(e)(4).

Here, the ALJ evaluated Plaintiff's functional limitations in several areas of function and found that Plaintiff had: (1) marked limitations in cognitive/communicative development; (2) no limitations in motoring functioning; (3) less than marked limitations in social functioning; (4) no limitations in personal functioning; (5) and less than marked limitations in concentration, persistence, or pace. Since the child's condition must result in either "extreme" limitations in one area or "marked" limitations in two areas to be functionally equivalent to the listed impairment, the ALJ determined that Plaintiff's condition does not meet the criteria, 20 C.F.R § 416.926a(a). Plaintiff challenges the ALJ's findings in cognitive/communicative development, social functioning, personal functioning, and concentration, persistence, or pace.

First, Plaintiff argues that the evidence supports a finding that he had marked

limitations in cognitive/communicative development. In fact, the ALJ did find that Plaintiff suffered from marked limitations in cognitive/communicative functioning. While the ALJ reasonably expected that the combination of appropriate medication and a specialized learning environment would improve Plaintiff's cognitive functioning, he nonetheless found that Plaintiff's cognitive/communicative function was markedly limited.

Next, plaintiff contends that his social function is markedly limited. Plaintiff asserts that his misbehavior was not in fact mitigated by medication. Plaintiff's mother testified during the ALJ hearing that Plaintiff was violent and did not get along with others. However, in his decision, the ALJ considered this testimony. The ALJ noted that the record indicated some evidence of behavioral problems. However, while Plaintiff's mother did not notice any change in his behavior with the medication treatment, the school records show otherwise. In particular, the school reports just prior to the administrative hearing state that Plaintiff was "feeling a sense of belonging," "interacting better with his classmates," and "appears to be happy." (Tr.90) The regulation guideline provides that "problems in social functioning, especially in the area of peer relationships, are often observed firsthand by teachers and school nurses . . .[S]chool records are an excellent source of information concerning function and standardized testing and should always be sought for school-age children." 20 C.F.R. pt 404, subpt. p, app. 1. Based on the record before the him, the ALJ had ample justification to find the Plaintiff's social functioning was not markedly limited.

Plaintiff also argues that he is markedly impaired in the area of personal functioning. Specifically, Plaintiff asserts that his defiant behavior, inability to follow simple directions and his attempts to injure himself and others are dispositive indications of his marked limitations in this area. (Plaintiff's Brief in Support of Motion for Summary Judgment, p. 6) Many of the instances of defiant and injurious behavior were reported by Plaintiff's mother. The ALJ specifically considered the mothers's testimony but reasonably believed it was not consistent with the records as a whole. As the Commissioner notes, Plaintiff's teachers consistently reported that he was able to perform all self-care activities and was "able to keep up with taking care of himself." (Tr. 22, 70, 89) Thus, the ALJ reasonably found that Plaintiff was not limited in the area of personal functioning. (Tr.22)

Plaintiff finally argues that his ability to concentrate, persist at a task, and his pace doing his tasks are more than moderately limited. Again, the ALJ discussed the testimony that Plaintiff's mother had to supervise Plaintiff closely in completing homework. The ALJ gave considerable weight to the school reports stating that Plaintiff had adequate ability to complete his assignments an did do so. (Tr. 80–90) While Plaintiff argues that Dr. Koeinig-Forbis' report is "replete with references to descriptions of his impairment in this area, "Plaintiff was not taking any medication for his symptoms at that time". Nor does Plaintiff point to a specific finding by any teacher or physician, treating or otherwise, that he was "markedly limited" in this area. See Briggs v. Callahan, 139 F.3d 606, 609 (8th Cir.1998)(holding the denial of benefits was supported by substantial evidence because the child's hyperactivity was not a significant limitation where it improved with medication); Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir.1999)("Impairments that are controllable or amendable to treatment do not support a finding of total disability."). As noted above, Plaintiff's symptoms did in fact improve with medication. (TR. 89–90)

Thus, based on the functional limitations found above, the ALJ reasonably found that Plaintiff did not have an impairment or a combination of impairments which was functionally equal to any impairment listed in 20 C.F.R. pt. 404, subpt. p, app, 1, and thus was not disabled.

### REMAND FOR CONSIDERATION OF ADDITIONAL MEDICAL EVIDENCE

Plaintiff argues that it was error on the part of both the ALJ and the Appeals Council to ignore certain evidence submitted after the administrative hearing as it allegedly tended to support that Plaintiff's impairments were functionally equivalent to a listed impairment. This evidence, Plaintiff contends, was relevant, material, and new and thus he has asked this Court to either grant his Motion for Summary Judgment, or, in the alternative, grant his Motion to Remand for further consideration of such evidence pursuant to the sixth sentence of 42 U.S.C. § 405(g). (Plaintiff's Brief at 14) However, having reviewed the records, the undersigned is not convinced that the reports are relevant to time period at issue in Plaintiff's application for Childhood SSI Benefits.[4]

The additional information presented by Plaintiff includes school discipline referrals indicating that Plaintiff was suspended for misbehavior on numerous occasions and a letter from Ms. Ponton, Plaintiff's special education teacher. On March 21, 2000, Ms. Ponton states "I notice a shift in Julian's behavior the last few weeks. He has been demonstrating violent behaviors. I am concerned for the safety of the children ...." (Tr. 162) Further, while Plaintiff had been disciplined at school on an infrequent basis in 1999,

Plaintiff was suspended from school three times in less than four weeks following the ALJ's final decision. (The AJS's decision was final on March 3, 2000) A A general classroom behavior form was filed on March 31, 2000 indicating that Plaintiff destroys property, cries easily/frequently, gives up easily, needs frequent redirection to complete task and teases. Plaintiff was also verbally aggressive, rebellious, easily distracted, careless and uncaring, and has difficulty waiting for turn. (Tr. 161) Thus, as the Commissioner points out, much of this additional evidence tends to show that Plaintiff's condition deteriorated rapidly after the date of the ALJ's decision. Such information cannot be considered material to his condition at the time of the ALJ's decision. *See Wyatt v. Sec'y of Health & Human Serv.,* 974 F.2d 680, 685 (6th Cir.1992)(holding that evidence of subsequent deterioration was not material to claimant's condition at the time of the ALJ's decision) In these circumstances, the appropriate remedy is to re-apply for benefits.

Even assuming, arguendo, that this additional information was new and material, Plaintiff nonetheless fails to show good cause as to why these reports were not submitted timely. Absent a showing of good cause, a sentence six remand is not appropriate here. *See Cotton v. Sullivan,* 2 F.3d 692, 695–96 (6th Cir.1993); *Wirth v. Comm'r of Soc. Sec.,* 87 Fed.Appx. 478, 480 (6th Cir.2003).

### NOTICE TO PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10)

---

**4.** Although it is not the role of this court to resolve underlying conflicts in the evidence, a review of the medical records is necessary in order to determine if the newly submitted medical reports are new (not cumulative), relevant, and material to the issue of Plaintiff's disability. The undersigned is reviewing the factual conflicts in the underlying evidence only to the extent necessary to fairly adjudicate the merits of Plaintiff's Motion to Remand.

days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to Rule 72.1(d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained with the objections.