NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0483n.06
Filed: July 5, 2007

Case No. 06-5763

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES T. WEST, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| COMMISSIONER SOCIAL SECURITY | ) | DISTRICT OF KENTUCKY |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BOGGS, Chief Judge; BATCHELDER, and GRIFFIN, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Appellant James T. West ("West") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income benefits. West argues that he should have been classified as disabled under the Social Security Act because (1) he suffers from hypothyroidism and heart palpitations that cause debilitating weakness and fatigue and (2) he meets or equals the requirements of mental retardation as defined under the Commissioner's Listing of Impairments. Finding no merit in West's arguments, we **AFFIRM** the Commissioner's denial of benefits.

**I.**

James T. West has a seventh-grade education; he reads and writes at a third-grade level; and his most recent IQ tests reveal a verbal IQ of 67, performance IQ of 72, and full-scale IQ of 66. Before his physical health deteriorated, West worked full-time for the City of Wilmore, performing

various types of maintenance and construction work. In August 1998, West began visiting Dr. Thomas Coburn for his thyroid problems and irregular heartbeat. Over the next few years, Dr. Coburn prescribed medicine for West's condition, continually altering the dosage as his condition changed. In early 2001, Dr. Coburn noted that West's "thyroid ha[d] [become] very difficult to manage [causing him to] miss[] many days of work from severe fatigue." In April 2001, because of work limitations imposed by his doctor, West reduced his full-time position with the City of Wilmore, working two eight-hour days each week as a garbage truck driver.

In May 2001, West filed his application for supplemental security income with the Commissioner. During the pendency of his application, he continued treatment with Dr. Coburn. Throughout the remainder of 2001, West's thyroid tests continued to show irregularities, but by April 2002, his test results returned to the normal range, and West indicated that he was "having more energy" with no thyroid symptoms. In July 2002, Dr. Coburn wrote a letter in defense of West's disability claim, in which he stated:

> [West] has a long-standing history of severe hypothyroidism and palpitations with an irregular heart rate. . . . His thyroid has been very difficult to keep under control and this has often caused him to miss work. He has at times had such severe hypothyroidism that he really had difficulty leaving his house at all. . . . I believe it would be very difficult for him to be employed while he is still trying to get his hypothyroidism under control, especially in lieu [sic] of the fact that he often has associated palpitations when his thyroid is uncontrolled.

Over the next few years, West's thyroid levels continued to fluctuate erratically.

After the Commissioner denied West's disability application initially and on reconsideration, the Administrative Law Judge ("ALJ") held a hearing on his claim. In September 2002, the ALJ affirmed the denial of West's application, finding that he engaged in substantial gainful activity and therefore was not disabled. The Appeals Council remanded to the ALJ with instructions to

reevaluate whether West was truly engaging in substantial gainful activity. In July 2003, the ALJ again denied West's application; this time concluding that West was not disabled because he did not suffer from a severe impairment. The Appeals Council denied West's request for review, and West appealed to the district court. In July 2004, the district court found that West presented evidence of a severe impairment and remanded to the Commissioner for further consideration.

Meanwhile, West filed another disability application, which was also denied initially and on reconsideration. Thereafter, West's two disability applications were consolidated, and the ALJ held a joint hearing in June 2005. The ALJ again found that West was not disabled, concluding that West's hypothyroidism was a severe physical impairment, but refusing to find that he experienced severe "problem[s] with symptoms of fatigue, lethargy, or weakness" because Dr. Coburn's treatment notes indicated that West "routinely denie[d] problems with symptoms of fatigue or weakness." Based in part on the inconsistencies between West's statements to his doctor and his representations to the Social Security Administration, the ALJ concluded that West's "allegations regarding his limitations [were] not totally credible." The ALJ also afforded "little probative weight to Dr. Coburn's . . . statement that 'it would be very difficult for [West] to be employed while he is still trying to get his hypothyroidism under control.'" After discounting this medical opinion, the ALJ looked to the objective evidence of West's activities and found that West's ability to work two eight-hour workdays each week and to maintain a "fairly robust regimen of daily activities" "support[ed] a finding that [he] continue[d] to possess a residual functional capacity capable of performing significant [light exertion] work." The ALJ then concluded that West "retain[ed] the capacity for work that exists in significant numbers in the national economy" and therefore did not qualify as disabled under the Social Security Act.

3

Turning to West's mental deficiencies, the ALJ concluded that West's borderline intellectual functioning and adjustment disorder were severe impairments because "they impose[d] moderate limitations on [his] ability to maintain concentration, persistence, and pace." Even though these impairments were severe, the ALJ found that West did not meet or equal any of the Mental Disorder Listings because he did not exhibit "marked" limitations in his "daily living activities, social functioning, or ability to maintain attention and concentration"; he did not indicate an "inability to function outside of a highly supportive living arrangement"; and he did not produce "qualifying IQ scores before age 22."

West appealed the ALJ's opinion to the district court, and the court affirmed. West then filed a timely notice of appeal to this court.

**II.**

We will uphold the Commissioner's decision if it is supported by substantial evidence. *Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). When evaluating whether substantial evidence supports the Commissioner's conclusion, we must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

4

The ALJ's task is to determine whether a claimant is disabled under the Social Security Act. "Disability" for Social Security purposes is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). "In determining whether the claimant is disabled, the [ALJ] will look at all material facts." *Walker v. Sec'y of Health and Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992).

## III.

West argues that the objective medical testing evidence and Dr. Coburn's medical opinion uniformly support a finding of disabling weakness and fatigue, and the ALJ erred in relying on nonprobative, non-medical opinion evidence to find he was not disabled. We reject this argument, first, because the medical evidence does not uniformly support a disability finding, and second, because the non-medical opinion evidence relied upon by the ALJ — West's own characterization of his symptoms as contained in Dr. Coburn's treatment notes — is highly probative of the issue of West's weakness and fatigue.

We begin with Dr. Coburn's medical opinion. "The medical opinion of the treating physician is to be given substantial deference — and, if that opinion is not contradicted, complete deference must be given." *Walker*, 980 F.2d at 1070. "The [Commissioner], however, is not bound by treating physicians' opinions, especially when there is substantial medical evidence to the contrary." *Cutlip*, 25 F.3d at 287; *accord Bogle v. Sullivan,* 998 F.2d 342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(d)(2). The Commissioner may reject a treating physician's determinations "when good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

5

In this case, Dr. Coburn wrote that "it would be very difficult for [West] to be employed while he is still trying to get his hypothyroidism under control[.]" This is not a specific, medically supported opinion on the nature and severity of West's impairments; rather it is an assessment on the ultimate issue of whether West could continue to work with his medical condition. We have repeatedly rejected such conclusory statements from treating physicians. *See, e.g.*, *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (holding that a "brief conclusory letter from [claimant's] treating physician[] was not dispositive of the [disability] issue"); *Cutlip*, 25 F.3d at 287 (rejecting the opinions of treating physicians because "they were conclusory and inconsistent with the other evidence"). Moreover, because "the [ultimate] determination of disability is the prerogative of the [Commissioner], not the treating physician," we need not accept Dr. Coburn's opinion on this issue. *Houston*, 736 F.2d at 367; *see also* 20 C.F.R. § 404.1527(e).

In addition to being conclusory, Dr. Coburn's opinion is contradicted by substantial medical evidence, including the opinions of virtually every other doctor who has reviewed West's treatment history. In May 2001, Dr. James T. Ramsey reviewed West's medical records and concluded that West was "treated successfully" for hypothyroidism and his condition was "not expected to prevent . . . work related activity." At least two other consulting physicians similarly found West's hypothyroidism-related impairments to be less than severe. While reports from treating physicians generally are given more weight than reports from consulting physicians, *see Kirk*, 667 F.2d at 536, the Commissioner may reject conclusory treating-physician opinions in favor of consulting-physician opinions that are supported by substantial evidence. *See Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (discounting the treating physician's opinion and finding that there was substantial evidence to support the Commissioner's denial of disability benefits

6

because "other consulting physicians ha[d] concluded that [the claimant was] still capable of working").

Dr. Coburn's opinion is also contradicted by West's own statements as contained in Dr. Coburn's treating notes. In April 2002, West indicated that he had "no" thyroid symptoms and was "now having more energy." In July 2002, West "[r]eported that his thyroid seem[ed] to be under decent control[.]" In December 2003, West stated that his "[t]hyroid symptoms ha[d] been under good control . . . [and] [h]e [was] in good health and ha[d] no concerns." In August 2004, West informed Dr. Coburn that even though he was experiencing thyroid symptoms including fatigue, he maintained "good thyroid control," was "[i]n good health for the most part," and was "doing well at [his part-time] job." We find that the ALJ did not err in refusing to give probative weight to a treating physician's opinion that is contradicted by statements from the claimant himself. *See Wright v. Sullivan*, No. 91-5992, 1992 WL 75218, at *5 (6th Cir. April 15, 1992) (refusing to credit a physician's assessment of the claimant's condition because it "was supported by no clinical findings and [it was] contradicted by claimant's own statements").

Having found Dr. Coburn's opinion unpersuasive, we turn next to the objective medical evidence, which consists of West's thyroid test results. This objective evidence consistently shows (with the exception of test results in April 2002) that West's thyroid-stimulating hormone levels were out of the normal range, but this evidence alone does not demonstrate the severity of West's purported weakness and fatigue. A claimant seeking to establish disability from weakness or fatigue must introduce both objective evidence and subjective complaints. *See Buxton*, 246 F.3d at 773 (quoting 42 U.S.C. § 423 (d)(5)(a)); *see also* 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of . . . symptoms, [the Commissioner] consider[s] all of the available evidence,

7

including [claimant's] history, the signs and laboratory findings, and statements from [claimant] . . . ."). The ALJ rejected West's subjective complaints of limitations from weakness and fatigue, finding that such allegations were "not totally credible," and West has not challenged these credibility findings on appeal. *See Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987) (acknowledging that "the determination of credibility related to subjective complaints of pain [and fatigue] rest[s] with the ALJ"). Because West has not established the subjective component of his disabling fatigue, he cannot succeed on this argument, regardless of what the objective medical evidence demonstrates. We therefore affirm the ALJ's finding that West did not suffer from disabling weakness and fatigue.

**IV.**

West next argues that the ALJ erred by finding that he did not meet or equal Section 12.05(C) of the Social Security Administration's Listing of Impairments, which defines mental retardation. Listing 12.05(C) provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when . . .
>
> (C) [The claimant has demonstrated] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]"

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). In essence, then, a claimant must make three showings to satisfy Listing 12.05(C): (1) he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the

8

developmental period" (i.e., the diagnostic description); (2) he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id. See also Foster v. Harris*, 279 F.3d 348, 354-55 (6th Cir. 2001); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

The ALJ found that West had not satisfied the first element — the diagnostic description of mental retardation — because he did not produce a qualifying IQ score before age 22 and he did not demonstrate deficits in adaptive functioning. We begin with the ALJ's implied requirement that a claimant must introduce a qualifying IQ score before age 22 to satisfy the diagnostic description of mental retardation. While the claimant *may* use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested during his developmental period, *see Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 873 (6th Cir. 2003) (unpublished decision), a claimant is by no means *required* to produce an IQ score obtained prior to age 22. Thus, the ALJ erred to the extent he implied that the claimant must produce such evidence.

We nevertheless affirm the ALJ's decision because West introduced absolutely no evidence that he experienced deficiencies at all in "adaptive functioning," let alone that any such deficiencies arose during the developmental period. *See Foster*, 279 F.3d at 355; *Carmack v. Barnhart*, 147 F. App'x 557, 560-61 (6th Cir. 2005) (unpublished opinion). Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills. *See Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993). The ALJ found that West did not exhibit "marked" limitations in his "daily living activities, social functioning, or ability to maintain attention and concentration," and that West did not demonstrate an "inability to function outside of a highly

9

supportive living arrangement." Substantial evidence supports the ALJ's conclusion that West did not experience deficiencies in adaptive functioning. Prior to the deterioration of his physical health, West held a long-term, full-time position with the City of Wilmore, demonstrating his ability to interact socially on a daily basis. Even after his health diminished, West continued to drive a garbage truck on a part-time basis, to care for his daily needs, to pay bills, to shop for groceries, to interact with friends and families, and to engage in numerous other daily activities.

The medical evidence also supports the ALJ's conclusion. Both Mr. I.T. Baldwin and Dr. Gary Dunn performed psychological examinations of West, and neither diagnosed him with any form of mental retardation. In fact, Mr. Baldwin did not diagnose West with any mental disorder,[1] and Dr. Dunn's evaluation revealed only borderline intellectual functioning and adjustment disorder, not mental retardation. Dr. Dunn's report specifically discussed areas impacting on West's adaptive functioning, noting that West "appear[ed] to be capable of understanding and retaining simple instructions" and "maintaining concentration and attention skills necessary to complete basic tasks in a work environment." Dr. Dunn also indicated that West would not have difficulty "interacting effectively with co-workers and supervisors" nor would he "experience significant difficulty dealing with a reasonable amount of work stress." This medical evidence indicates that West did not exhibit deficiencies in adaptive functioning, and thus supports the ALJ's conclusion that West did not meet

---

[1]West urges us to ignore completely Mr. Baldwin's evaluation, contending that Mr. Baldwin is "not credible," is "not a psychologist," and is "not an acceptable medical source." Other than bald assertions, West has not provided legal authority indicating why we should reject Mr. Baldwin's test results. The basis for West's assertion that Mr. Baldwin is not a psychologist or an acceptable medical source is not at all clear from the record, which shows that Baldwin has a master's degree, is a consultant with "Psychological Associates, Ltd.," and undertook the consultative examination at the request of the Commissioner. We fail to see why the ALJ should have entirely ignored Mr. Baldwin's evaluation, and, in any event, the ALJ did not rely on Mr. Baldwin's evaluation, but only mentioned it in a footnote, choosing instead to "grant[] more probative weight" to Dr. Dunn's report because of his "superior credentials and more recent testing."

10

or equal Listing 12.05(C).

## V.

For the foregoing reasons, we **AFFIRM** the decision of the Commissioner of the Social Security Administration.