**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0347n.06

**No. 09-5543**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CARTER LEE TURNER )
)
  Plaintiff-Appellant, )
)
v. ) On Appeal from the United States
) District Court for the Eastern
COMMISSIONER OF SOCIAL SECURITY ) District of Kentucky
)
  Defendant-Appellee. )

**FILED**
**Jun 07, 2010**
LEONARD GREEN, Clerk

Before:  MARTIN, BOGGS, and WHITE, Circuit Judges.

  BOGGS, Circuit Judge. Carter Lee Turner (Turner) appeals a district court order affirming

an administrative law judge's (ALJ's) denial of Turner's application for disability benefits and

Supplemental Security Income. Turner raises three claims: (1) the ALJ's determination that Turner

did not meet listing 12.05C was not supported by substantial evidence; (2) the ALJ improperly

rejected the opinion of a treating physician without good reason; and (3) the ALJ's questions to the

vocational expert (VE) did not accurately reflect the limitations imposed by Turner's impairments.

Because we conclude that none of these claims have merit, we affirm the judgment of the district

court.

**I**

  In early 2003, Turner suffered an on-the-job injury while working in a coal mine. Turner

sought treatment from his primary care physician, Dr. Sharon Colton. Dr. Colton referred Turner

to Kentucky Physical Therapy for treatment. Dr. Colton also had Turner undergo an MRI, which revealed that Turner suffered from a herniated disc, a bulging disc, and degenerative disc disease.

Upon receiving the results of Turner's MRI, Dr. Colton referred Turner to Dr. Bean, a neurologist, for treatment. Dr. Bean opined that physical therapy remained the best approach to Turner's problems, and that surgery would have little benefit. He recommended that Turner continue physical therapy, and eventually attempted to have Turner undergo "full work hardening."

By December 2003, both Dr. Bean and Dr. Colton concluded that Turner had probably reached maximum medical improvement. They decided that Turner should undergo a functional capacity examination to determine his current work capacities. Turner underwent a two-day functional capacity examination administered by Kentucky Physical Therapy. The examination revealed that Turner could sit for up to eight hours per work day (with thirty-minute stretch periods), stand for two-thirds of an eight-hour work day, and walk or stair climb for a full eight-hour work day, albeit with a break every twenty minutes. The examination also revealed that Turner could lift thirty pounds infrequently, twenty pounds occasionally (up to one-third of an eight-hour work day), and ten pounds frequently.

Dr. Bean reviewed Kentucky Physical Therapy's report and concluded that the restrictions expressed in the report were permanent. Dr. Colton thereafter continued to manage Turner's pain using various medications. In April 2005, Dr. Colton referred Turner to Dr. Ballard Wright for pain management. Dr. Ballard Wright's colleague, Dr. Peter Wright (Dr. Wright), treated Turner for over a year. Dr. Wright sought to control Turner's pain primarily through the use of various medications.

Beginning in 2004, Turner also sought Social Security disability benefits and Supplemental Security Income. During the application process, Turner underwent consultative examinations by various physicians, including Dr. Bobby J. Kidd, Dr. Christine Muckenhausen, and Dr. Charles Hieronymus. These examinations revealed, among other things, that Turner was blind in his right eye, suffered coal workers' pneumoconiosis and small airway disease, and had unilateral hearing loss, chronic tinnitus, and impaired speech discrimination.

After an initial review, the Social Security Administration denied Turner's application for benefits. Turner then sought a hearing before an ALJ, which was held on February 7, 2006. Following that hearing, the ALJ issued a decision denying Turner benefits. Shortly thereafter, Turner filed a request for review, which the Appeals Council denied. Turner then filed a civil action against the Commissioner of Social Security in the United States District Court for the Eastern District of Kentucky. Before the district court could rule on the merits, the Commissioner filed a request for remand, which the district court granted.

On remand, the ALJ requested that Turner undergo a consultative examination, which was performed by Dr. Daniel S. Stewart. Based upon a review of Turner's medical records, Dr. Stewart completed a functional capacity evaluation form on which he listed various significant restrictions on Turner's functioning.

The ALJ held a second hearing on January 24, 2008. At the hearing, the ALJ questioned a VE regarding jobs available to a hypothetical individual who exhibited certain of Turner's alleged limitations and attributes. In response to the ALJ's questioning, the VE indicated that jobs would be available to such an individual and provided specific examples.

After the hearing, Turner submitted a psychological evaluation performed by Reba Moore, a Licensed Psychological Practitioner. This evaluation indicated that Turner had an IQ score of 67, read at a second-grade level, and performed arithmetic at a fourth-grade level. Ms. Moore concluded that Turner's IQ score fell "within the range of Mild Mental Retardation" and "was deemed a valid and reliable representation of his current intellectual functioning."

On March 7, 2008, the ALJ issued a decision again denying Turner disability benefits. The ALJ concluded that Turner's impairments did not meet or equal any of the impairments enumerated in the Listing of Impairments, and that Turner remained capable of performing jobs that existed in significant numbers in the national economy. The ALJ therefore concluded that Turner was not disabled within the meaning of the Social Security Act. Turner filed a timely complaint in the United States District Court for the Eastern District of Kentucky seeking review of the ALJ's decision. The district court affirmed the ALJ's decision. Turner timely appealed.

## II

On appeal, Turner attacks the procedural adequacy and evidentiary basis of the ALJ's decision. Under the Social Security Act, the Commissioner decides whether a claimant is disabled within the meaning of the Act. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). To make this decision, the Commissioner undertakes a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner assesses whether the claimant is currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Next, the Commissioner determines whether the claimant has a "severe medically determinable physical or mental impairment" that meets applicable duration requirements. *Id.* §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii). Third, the Commissioner determines whether the claimant's impairment "meets or equals" one of the listings enumerated in the Listing of Impairments (Appendix 1 of the regulations). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Fourth, the Commissioner assesses the claimant's "residual functional capacity" and determines whether the claimant can still perform "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, the Commissioner determines whether, based on the claimant's residual functional capacity and vocational profile, the claimant "can make an adjustment to other work." *Id.* §§ 404.1420(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all but the fifth step. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

This court reviews the Commissioner's decision only to determine whether it was supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ibid.* When substantial evidence supports the Commissioner's decision, this court must affirm even if "substantial evidence, or even a preponderance of the evidence, [also] supports the claimant's position . . . ." *Jones*, 336 F.3d at 477. Under this standard of review, Turner's evidentiary and procedural attacks on the ALJ's decision fail.

**A**

Turner first challenges the ALJ's failure to find him disabled under listing 12.05C. At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). Listing 12.05 describes circumstances in which mental retardation is severe enough to preclude gainful activity. *See id.* Pt. 404, Subpt. P, App. 1 §12.05. To meet the requirements of listing 12.05C, a claimant must show: (1) the claimant experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (i.e., before the age of twenty-two); (2) the claimant has a verbal, performance, or full scale IQ of 60 through 70; and (3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work-related limitation on function. *See ibid.*; *id.* § 12.00(A); *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 697-98 (6th Cir. 2007); *see also Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001). In this case, the ALJ rejected the applicability of listing 12.05C because Turner failed to show that he manifested significantly subaverage general intellectual functioning with deficits in adaptive functioning during his developmental period.

Turner attacks the ALJ's finding on two grounds. First, Turner asserts that Ms. Moore's diagnosis of mild mental retardation was alone sufficient to show that appellant suffered functional deficits during his developmental period. Second, Turner argues that his academic and work history serve as independent evidence of mental retardation dating back to his developmental period.

Neither of these arguments has any merit. First, Turner's present IQ scores do not serve as evidence that he suffered subaverage intellectual functioning or deficits in his adaptive functioning during his developmental period.[1] A claimant must produce evidence beyond his present IQ scores

---

[1]Turner cites *McPeek v. Sec'y of Health & Human Servs.*, No. 93-5204, 1994 WL 56929 (6th Cir. Feb. 24, 1994) for the proposition that, absent evidence that a claimant's IQ has declined,

No. 09-5543
Turner v. Comm'r of Soc. Sec.

to show that he exhibited deficits during his developmental period.[2] *See Foster*, 279 F.3d at 354-55; *West*, 240 F. App'x at 698.

Second, the evidence regarding Turner's history and academic record could lead a reasonable person to conclude that Turner did not manifest significantly subaverage intellectual functioning or adaptive deficits during his developmental period. Although Ms. Moore found no evidence that Turner ever functioned higher than he does now, two psychologists who reviewed Turner's records found no evidence of below-average intellectual functioning or adaptive deficits. Turner was not enrolled in any special education classes in school, and he neither failed a class nor was held back until the ninth grade.[3] Even in the ninth grade, Turner received above-average grades in science and math. Turner's work history, though modest,[4] is not inconsistent with a finding that he did not exhibit significantly subaverage intellectual functioning. Nor do Turner's academic record and work experience evidence adaptive deficits—that is, deficits in social skills, communication, and daily

_____

present IQ scores demonstrate significantly subaverage intelligence and adaptive deficits during the developmental period. The *McPeek* decision applied an earlier version of the Listing of Impairments, which has since been amended to clarify that a claimant must establish *both* that he currently has an IQ of 60 through 70 *and* that he exhibited subaverage mental functioning and adaptive deficits during his developmental period. *See* 65 Fed. Reg. 50746, 50776 (August 21, 2000); *see also Foster*, 279 F.3d at 354 (discussing the amendment). The reasoning in *McPeek* is thus no longer consistent with the showing required by the regulations, and this Circuit's published case law has not followed *McPeek*. *See Foster*, 279 F.3d at 354-55 (interpreting listing 12.05C to require separate evidence, beyond present IQ scores, of deficits during the claimant's developmental period).

[2]A claimant need not, however, produce an IQ score from before the age of 22. *West*, 240 F. App'x at 698.

[3]Turner dropped out of high school during his second attempt at the ninth grade.

[4]Turner worked as a truck driver, coal miner, and light mechanic.

living skills, *see West*, 240 F. App'x at 698—during Turner's developmental period. In fact, Turner

has brought forth no evidence suggesting that he exhibited any adaptive deficits prior to his injury.

Under these circumstances, the ALJ's determination that Turner did not meet the requirements of

listing 12.05C was supported by substantial evidence. *See Foster*, 279 F.3d at 354-55 (finding that

the claimant, who had an IQ in the high 60s and dropped out of high school after the ninth grade, did

not show significantly subaverage intellectual functioning or adaptive deficits during her

developmental period).

**B**

Turner next challenges the weight that the ALJ assigned to an opinion submitted by Dr.

Wright, one of Turner's treating physicians. Under Social Security regulations, when a treating

physician submits a medical opinion, the ALJ must either defer to the opinion or provide "good

reason" for refusing to defer to the opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see*

*also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (indicating that an ALJ must

satisfy these requirements). Yet a treating physician's opinion is only entitled to such special

attention and deference when it is a *medical opinion*. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

When a treating physician instead submits an opinion on an issue reserved to the

Commissioner—such as whether the claimant is "disabled" or "unable to work"—the opinion is not

entitled to any particular weight. *Id.* §§ 404.1527(e), 416.927(e); Soc. Sec. Rul. 96-5p, 61 Fed. Reg.

34471, 34474; *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing Soc. Sec. Rul.

96-5p). Although the ALJ may not entirely ignore such an opinion, *Bass*, 499 F.3d at 511, his

decision need only "explain the consideration given to the treating source's opinion." Soc. Sec. Rul. 96-5p, 61 Fed. Reg. at 34474; *see also Bass*, 499 F.3d at 511 (citing Soc. Sec. Rul. 96-5p).

In this case, Dr. Wright provided a "summary statement" in which he stated that Turner was "unable to work" and was not "currently capable of a full-time 8-hour workload." The ALJ considered the statement and concluded that it was an opinion on an issue reserved to the Commissioner—whether Turner could work. The ALJ also noted that the statement indicated that "with vocational retraining [Turner] might be employable in the future."

Turner argues that the ALJ violated agency regulations when he failed to treat Dr. Wright's statement that Turner could not work "a full-time 8-hour workload" as a medical opinion. Turner further asserts that the ALJ's rejection of Dr. Wright's opinion was not supported by substantial evidence, and that the ALJ failed to provide good reason for the rejection.

The ALJ's decision did not violate agency regulations. Dr. Wright's statement that Turner was not "currently capable of a full-time 8-hour workload" was simply an alternate way of restating his opinion that Turner was "unable to work." It was thus an opinion on an issue reserved to the Commissioner and was not entitled to any deference. Further, the ALJ's decision adequately explained the consideration given to Dr. Wright's opinion by noting that the opinion spoke to an issue reserved to the Commissioner and that the opinion ultimately expressed uncertainty as to Turner's inability to work.

The ALJ's rejection of Dr. Wright's disability opinion was also supported by substantial evidence. Dr. Wright's statement itself indicated that, with vocational training, Turner might be able to work. Other treating sources, including Kentucky Physical Therapy and Drs. Bean and Colton,

did not conclude that Turner was incapable of light work. Although Turner argues that these

opinions were outdated, Dr. Wright's subsequent treatment notes indicated that medications

effectively controlled Turner's pain, and reports from late 2007 indicated that Turner was capable

of "weed eating in his yard" and vacuuming his house. Thus, substantial evidence did support the

ALJ's decision to reject Dr. Wright's disability opinion.

## C

Turner's final attack on the ALJ's decision focuses on the hypothetical questions that the ALJ

directed to the VE. At the fifth step in the disability evaluation process, the Commissioner bears the

burden of proving that there are a significant number of jobs in the economy that accommodate the

claimant's residual functional capacity and vocational profile. *Jones*, 336 F.3d at 474; *see also* 20

C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). To satisfy this burden, the Commissioner may rely

upon the testimony of a VE in response to a hypothetical question, but only if the question accurately

portrays the claimant's physical and mental impairments. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d

235, 239 (6th Cir. 2002) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th

Cir. 1987)). This means that the question must "reference all of a claimant's limitations," though

it need not contain a list of the claimant's medical conditions. *Webb v. Comm'r of Soc. Sec.*, 368

F.3d 629, 633 (6th Cir. 2004).

In this case, the ALJ relied on the VE's response to two hypothetical questions to satisfy the

Commissioner's burden. In the first question, the ALJ asked if employment would be available to

a hypothetical individual who was only "capable of performing in a range of light exertion" and had

numerous other limitations, including a restricted ability to stoop, bend, crouch, or crawl. In the

second question, the ALJ added two further limitations to those listed in the first question: the individual could stand no more than thirty minutes uninterrupted, and the individual could sit no more than forty-five minutes uninterrupted. In response to both questions, the VE indicated that jobs would be available and provided specific examples.

Turner finds two faults with these questions. First, Turner asserts that the ALJ intended to rely on the opinion of Dr. Stewart in determining the claimant's functional capacity, but failed to obtain testimony consistent with that opinion. Second, Turner suggests that, even if the ALJ instead intended to rely on the functional capacity evaluation performed by Kentucky Physical Therapy, the questions to the VE did not accurately reflect the limitations assessed in that evaluation.

Turner's arguments fail on both counts. First, nothing in the record suggests that the ALJ intended to rely on the functional capacity evaluation form completed by Dr. Stewart. In fact, at the hearing, the ALJ specifically indicated that his hypothetical questions were not based on Dr. Stewart's assessment. Likewise, the ALJ's decision expressly accepted the "residual functional capacity findings of Kentucky Physical Therapy." This was appropriate, as Dr. Stewart was merely a consultative examiner, while Kentucky Physical Therapy was a treating source. *See* 20 C.F.R. § 404.1527(d)(2) (indicating that a treating source's opinion is entitled to deference); *id.* § 416.627(d)(2) (same).

Second, the ALJ's questions to the VE did incorporate the limitations set forth in the functional capacity evaluation form completed by Kentucky Physical Therapy. The ALJ's questions included restrictions on Turner's ability to stand or sit uninterrupted that were consistent with Kentucky Physical Therapy's findings. Likewise, when the ALJ asked the VE to assume that Turner

could only perform work in the "range of light exertion," he conveyed specific exertional limitations that mirrored those found by Kentucky Physical Therapy: the Dictionary of Occupational Titles—published by the Department of Labor and followed by the VE in this case—defines "light work" to include only work that involves "[e]xerting up to 20 pounds of force occasionally (. . . up to 1/3 of the time) and/or up to 10 pounds of force frequently (. . . from 1/3 to 2/3 of the time)." *See* Dictionary of Occupational Titles 342.667-010 (4th Ed. 1991), *available at* 1991 WL 672849. The ALJ's questions thus accurately reflected the exertional limitations imposed by appellant's impairments.

### III

For the reasons given above, the judgment of the district court is AFFIRMED.